[Civ. No. 45649. Second Dist., Div. One. Dec. 28, 1976.]

BAR MASTER, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

Hill, Farrer & Burrill, Carl A. Stutsman, Jr., Jack R. White, Rex W. Kellough, Robert P. Hess, and R. Bruce Murchison for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Bar Master, Inc. sued State Board of Equalization (Board) for a refund of use taxes paid by it pursuant to deficiency assessment by the Board following the Board's denial of claim for refund. Defendant appeals from judgment in favor of plaintiff.

The cause was tried by the court without a jury upon a stipulation of facts and two depositions.

Bar Master purchased various component parts and thereafter, in its principal place of business assembled an electrical-mechanical unit used by bartenders and others to dispense water, soda and other mixing ingredients used in making mixed drinks at bars and similar business places. These will be referred to as units or as beverage dispensing units. These units were made available to customers as lessees, of Bar Master as lessor pursuant to one of two types of contractual agreements under each of which title to the units remained in lessor.[1]

Each form of contract called for Bar Master to perform the initial installation and then to furnish continuous maintenance and repair service throughout the life of the agreement. The typical contract term was two years, with automatic renewal at the end of that period unless the customer gave appropriate termination notice as provided by the contracts. According to a finding by the trial court, the average cost to Bar Master of a unit installed pursuant to the contracts was $200-$250; the reasonable market value thereof was about $300. The amount of the monthly charge which the customer agreed to pay to Bar Master depended upon the size of the unit, the average charge being approxi-

---

[1] On very few occasions, a customer would purchase a unit and become owner thereof. None of these purchase-sale transactions is involved at bench.

mately $40 per month. The customer's charge remained constant whether calls for service maintenance or repairs were none, few or numerous. In this connection, the trial court found that the charge "was substantially in excess of the reasonable rental value of the equipment." Plaintiff had a fleet of radio-dispatched service trucks which were on call 24 hours a day, 7 days a week, to provide periodic inspection and maintenance of the units and to repair any breakdown which might occur at any time, and for prompt response to any customer call.

The units installed by Bar Master pursuant to the contracts constituted tangible personal property. Possession and use of the installed unit were transferred to the customer although Bar Master at all times retained title. The trial court found:

"9. Plaintiff's beverage dispensing units were at one time patented by plaintiff, but they are no longer patented, and they are similar in appearance and function to those of its competitors in the industry. Without service of the type provided by plaintiff, such equipment would be of little value to customers in the industry and customers customarily require some arrangement whereby service is provided. Plaintiff's customers are induced to deal with plaintiff rather than its competitors because of the level and quality of the service provided by plaintiff. Plaintiff and its customers understand and intend that the consideration paid by plaintiff under its contracts is essentially a charge for such service and not for the use of the equipment."

"16. The service which plaintiff performed pursuant to its contracts with its customers was an integral part of the transfer of the beverage dispensing units to the customer. The payment which plaintiff received for the transfer of the units and the service it performed upon the units was attributable both to the unit and to the service. By far, the greatest part of the monthly charges by plaintiff pursuant to said contracts constituted compensation for the services which the customers purchased and plaintiff performed. Only a minor fraction of the charges constituted rental or other consideration for the transfer of possession and use of the units."

So far as here material, section 6006 of the Revenue and Taxation Code[2] at all times has provided: " 'Sale' means and includes: . . . [¶] Any lease of tangible personal property in any manner or by any means

[2]Hereafter, unless otherwise indicated, all section references are to the Revenue and Taxation Code.

whatsoever, for a consideration" with five exceptions, none of which is here applicable. (See *Culligan Water Conditioning* v. *State Bd. of Equalization,* 17 Cal.3d 86, 90, fn. 3 [130 Cal.Rptr. 321, 550 P.2d 593].) ▮ The tax is imposed upon gross receipts (§ 6051) and is an excise or privilege tax. (*Livingston Rock & Gravel Co.* v. *De Salvo,* 136 Cal.App.2d 156, 160 [288 P.2d 317], quoted in *City of Pomona* v. *State Bd. of Equalization,* 53 Cal.2d 305, 309 [1 Cal.Rptr. 489, 347 P.2d 904]; *Coast Elevator Co.* v. *State Bd. of Equalization,* 44 Cal.App.3d 576, 587-588 [118 Cal.Rptr. 818].) "The tax is not imposed on individual sales [citation] but on gross receipts [citation]. ▮ The sales price includes services that are part of the sale [citations.]. ▮ It is presumed that all gross receipts are subject to the tax until the contrary is established (Rev. & Tax. Code, § 6091)." (*Coast Elevator Co.* v. *State Bd. of Equalization,* 44 Cal.App.3d 576, 588 [118 Cal.Rptr. 818].) "Gross receipts" under the law is defined to "mean the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise, without any deduction of" certain specified matter (§ 6012, subd. (a)) which is not here applicable; and "[¶] (b) The total amount of the sale or lease or rental price includes all of the following: [¶] (1) Any services that are a part of the sale." (§ 6012, subd. (b).)

The Board has statutory authority to adopt regulations (see § 7051 and Gov. Code, § 11420 et seq.) but no regulation appears to have been adopted covering the beverage dispensing unit industry as a whole and directed to the industry's use of such unit. Thus we consider two regulations governing service businesses (Cal. Admin. Code, tit. 18, § 1501) and the lease of tangible personal property (Cal. Admin. Code, tit. 18, § 1660), and applicable statutory provisions, as in *Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86. ▮ Under these particular circumstances, the standard of review applicable to the assessment of use tax liability against Bar Master based on the receipts derived from the lease of the units was discussed in *Culligan* and summarized as follows (p. 93): "In sum, our present task is to determine whether the Board in making the assessment in controversy has properly interpreted the relevant sections of the Sales and Use Tax Law and the Board's own relevant regulations adopted pursuant to such law. We recently summarized our proper function thusly: 'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the utlimate resolution of such legal questions rests with the courts.

[Citations.]' (*Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d 303, 310; [citations].) [Fn. omitted.] Therefore, giving the appropriate weight to the Board's interpretation, we must decide whether the receipts from plaintiff's customers using the 2,000 exchange units are taxable rentals for leases of tangible personal property within the meaning of the applicable provisions of the Sales and Use Tax Law and regulations promulgated thereunder."

Bar Master asserts that none of the transactions constituted a lease of tangible personal property, but similar contention was made and rejected in *Culligan* (17 Cal.3d at pp. 94-95). Plaintiff's customer "in a general but very practical sense has the use of the [beverage dispensing] unit which is installed in [the customer's place of business] and [the customer has dominion and control] over it while it is there. . . ." (*Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d at p. 95.) The court in *Culligan* held: "We, therefore agree with the position of the Board and conclude that on the present record plaintiff's furnishing of the [beverage dispensing] units in controversy under the provisions of its so-called annual service subscription [here either contract form] constituted a lease of tangible personal property." (P. 95.)

While one of Bar Master's contract forms is in the language of a lease and refers to Bar Master as "Lessor" and the customer as "Lessee," the other (entitled "Special Rate Service Contract") refers to Bar Master as "Company" and the customer as "Operator" (with a reference to the latter as "Lessee" in one of its provisions). Thus Bar Master contends that it is a service business. A like claim was made in *Culligan,* and it was held that determination was to be made on the object sought by the buyer or customer and not on what the contract was called, and that the true object controlled.

It is our view that the customer's object was to have use and control of a functional and operating beverage dispensing unit in his (customer's) place of business, and that the "service" provided by Bar Master was incidental.

The unit was obtained by the customer for use in making and mixing drinks in bars and similar places of business. Clearly, the main object of the customer was to have a unit that was functional and operating to assist him in his business. If the unit broke down, the customer could call Bar Master who would make a service call to correct the difficulty. If the unit did not break down but continued to function properly for a period

of two months, no service call would be made by Bar Master until then at which time a service man would look at the unit to assure that it was functioning properly. In a primary sense, it was the unit itself that was of importance to the customer, while any services involved were merely incidental to keeping it in a usable condition—functional and operational—for him. That was the true object of the transaction. (Note last sentence of fn. 8 of *Culligan,* 17 Cal.3d at p. 98.)

The rationale of *Culligan* compels the same result reached therein. After quoting from an applicable regulation found in section 1501 (Cal.Admin. Code, tit. 18), the court said: "We think it quite clear that the true object of the water conditioning contract is the furnishing of the exchange unit which, by itself and without requiring any performance of human labor, softens the water. It is true that human labor or service is involved in regenerating the ion-exchange material, but realistically viewed the customer's purpose in entering into the contract is to obtain, not personal services, but a properly generated and efficiently functioning water conditioning unit. Plaintiff's contention that it is providing primarily a water softening service and that the transfer of the water conditioning unit is merely incidental to the provision of this service simply does not fit the facts—the water softening is done by the water conditioning unit, the service of plaintiff's employees of generating and installing being merely incidental to the function performed by the unit." (17 Cal.3d at p. 96.)

Bar Master argues that, because the cost to it of each unit was $200-250, and the reasonable market value was about $300 (although its sale price, not here involved, was higher), the average monthly charge of $40 is so high as to make it improper to assess it any sales or use tax. ■ That the charge made by Bar Master was greatly in excess of a reasonable rental value of the unit (if true) constitutes no basis for any argument that a tax on that charge would be arbitrary or unreasonable. Bar Master points to no provision of law or regulation supportive of its contention. So far as we have been able to ascertain, no authority directs that the propriety of the tax assessment is to be gauged or determined by the reasonableness of the charge made by the lessor for use of tangible personal property. The law, both statutory and decisional, appears to be to the contrary. (§§ 6012, 6051, and 6091; *Coast Elevator Co.* v. *State Bd. of Equalization, supra,* 44 Cal.App.3d 576, 587-588. See also *Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86.)

Bar Master refers to certain of the Board's tax rulings, some of which were referred to by the plaintiff in *Culligan* and held to be inapplicable (17 Cal.3d at p. 97.) For like reason, the references made by Bar Master do not apply.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for defendant.

Wood, P. J., and Thompson, J., concurred.