[Civ. No. 21772. Fourth Dist., Div. Two. Apr. 7, 1981.]

ARTHUR WILKERSON, Plaintiff and Appellant, v.
CITY OF PLACENTIA, Defendant and Respondent.

---

**COUNSEL**

Richard J. Silber for Plaintiff and Appellant.

Ruston & Nance, Nancy E. Zeltzer and Lee O'Connor for Defendant and Respondent.

---

**OPINION**

**HYDE, J.\***—Plaintiff sought a writ of mandate compelling defendant City of Placentia to pay to him lost wages and benefits for the period of his wrongful discharge. The superior court denied the petition, and this appeal followed.

Plaintiff had been hired by the defendant city August 19, 1974, as a fire engineer with the city fire department. He was to be a probationary employee for one year. Before the year was up, he was summarily discharged following his arrest for alleged theft of fire department or city property. These charges were later dismissed by the district attorney after the case had been filed and after pretrial suppression motions had been granted by the court.

Plaintiff's notice of discharge specified that it was under rule XII of the Personnel Rules of the City of Placentia. These rules were part of a memorandum of understanding (referred to as the MOU) which was adopted by the city and plaintiff's union in 1973. This MOU provided discharge procedures for probationary employees subject to review under the grievance procedures allowing for an unresolved dispute to be

---

*Assigned by the Chairperson of the Judicial Council.

submitted to a grievance board and the decision of the arbitrator to be final. The MOU provided in article XII that the grievance procedure in such cases would be only for the limited purpose of determining whether or not the discharge was arbitrary and capricious.

Pursuant to these provisions, the city and the union agreed to a single arbitrator hearing and making the binding decision in the matter of the termination of Wilkerson. After dragging through some evidentiary hearings, the arbitrator ruled that the discharge was arbitrary and capricious and he awarded reinstatement to the job. He specifically declined to rule on the issue of back pay since that was beyond his jurisdiction. The hearings that resulted in this decision had covered several days during October, November, and December 1975 and were, according to the arbitrator's decision, full evidentiary hearings with counsel and the parties and witnesses present and participating. The interim decision of the arbitrator to reinstate the job came toward the end of December, just in time to get plaintiff back on the job before the department was transferred as a whole to the California Department of Forestry.

Plaintiff, through his counsel, then demanded his back pay and all his lost benefits. The city denied the request on the basis that the arbitrator had reinstated plaintiff without back pay. Several rounds of demand and rejection transpired before plaintiff came armed with a new basis for his demand, which basis was our decision in *Fugitt v. City of Placentia* (1977) 70 Cal.App.3d 868 [139 Cal.Rptr. 123]. *Fugitt*— which involved some of Wilkerson's coemployees in the same type of dispute—held that once the arbitrator finds that a discharge was arbitrary and capricious under the MOU proceedings then it is incumbent on the city to either try and impose a lesser discipline which would not have been subject to the grievance procedure or reinstate the plaintiffs with back pay for the period during which they were wrongfully deprived of their positions. The city—undaunted—responded that, even if *Fugitt* was final and binding, the city was still rejecting Wilkerson's claim because it had and did even now exercise its lawful right to impose a lesser discipline of reinstatement with loss of pay and benefits and that that decision was not one subject to the grievance procedure. Further requests and demands were made, but to no avail, and this petition for writ of mandate followed. In the petition for the writ, Wilkerson asked for reinstatement of pay and benefits and attorney fees and general damages.

The matter was duly submitted to the Honorable Robert H. Green, and he found that the case of Wilkerson was controlled by *Fugitt* and that the city had imposed the lesser discipline of reinstatement without back pay. The petition for the writ was denied. Findings of fact and conclusions of law were duly filed and the judgment was entered.[1]

Plaintiff raises numerous points in his appeal, but they all boil down to the following issues:

1. The applicability and controlling effect of the *Fugitt* decision.

2. Whether or not the procedures for the lesser discipline without pay were followed, and whether those procedures would require a full type evidentiary or trial type proceeding.

3. Whether the procedures followed deprived plaintiff of any constitutionally guaranteed rights.

We will discuss these various points only as necessary in view of our overall conclusion with regard to the constitutional issues involved.

Plaintiff Wilkerson takes the position that he is entitled to recognition of his "liberty interest" and further is entitled to the back pay that resulted when he was deprived of it. He was deprived of it when he was summarily discharged without any type of notice or opportunity to answer the charges levelled against him. The MOU proceedings were in no way a predischarge hearing. The later determination in 1977 of the "arbitrary and capricious" discharge, did not cure any action theretofore taken by the city. Plaintiff had long since been reinstated. The

---

[1] The findings of fact and conclusions of law provide in part:

"19. At all times relevant herein, Respondent did not foreclose Petitioner from other gainful employment.

"20. Petitioner is not entitled to the relief prayed for in his Petition for Writ of Mandate.

"CONCLUSIONS OF LAW

"1. The case of *Fugitt vs. City of Placentia* 70 Cal. App.3d 868 (1977) is applicable and controlling with regard to the instant case.

"2. Respondent followed the procedure enunciated in *Fugitt vs. City of Placentia* with regard to imposition of the lesser discipline of suspension without pay for the period of Petitioner's discharge.

"3. A full trial-type hearing with regard to the imposition of lesser discipline was not required.

"4. The discipline of suspension without back pay did not constitute a deprivation of Petitioner's Constitutional right of liberty."

later-imposed suspension without pay was applied to the period June 4, 1975, through December 30, 1975.

In the development of this area of the law, it was first determined that a public entity employer cannot discharge a permanent employee without full substantive and procedural due process. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) This because the employee, by virtue of his employment, holds a recognized property interest which is protected by due process.

It has also been determined that in cases of imposition of discipline, in the nature of suspension for more than a "short term," permanent employees are likewise entitled to at least minimal due process in the nature of a procedure that would apprise the employee of the proposed action, the reasons therefor, provide them with a copy of the charges including materials on which the action was based, and the right to respond either orally or in writing to the authority imposing the discipline. (*Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162].) This, again, is because the employee has the expectancy of earning his salary free from arbitrary administrative action. "Suspension of a right or of a temporary right of enjoyment may amount to a 'taking' for 'due process purposes.' (*Goss* v. *Lopez* (1975) 419 U.S. 565, 572-576 [42 L.Ed.2d 725, 733-736, 95 S.Ct. 729]; *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 811 [132 Cal.Rptr. 477, 553 P.2d 637].)" (*Civil Service Assn.* v. *City and County of San Francisco, supra*, 22 Cal.3d 552, 560.)

In 1979, the concept of due process as it relates to probationary employees was considered in *Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340 [159 Cal.Rptr. 440]. In that case probationary police officers were discharged for misconduct after a citizen complaint of unsworn charges had been received by the police department. The matter had been referred to the department's internal affairs bureau and an investigation started which lasted approximately two and one-half months. Upon a few hours' notice the probationary officers were summoned to the chief's office and told that he intended to dismiss them and that the purpose of the meeting was to afford them an opportunity to address the charges against them and give reasons why they should not be discharged. At the end of the meeting, they were terminated effective that day for "misconduct." ■ The Court of Ap-

peal held there is an exception to the rule that a probationary employee ordinarily may be dismissed without a hearing or judicially recognizable good cause. (He may be so dismissed because he is not deprived of a vested or property right.) The exception is one founded on the Fourteenth Amendment. It arises where there is a deprival of the "liberty" guaranteed all persons by that amendment's due process clause. The exception will be applied where the probationary employee's job termination, or dismissal, is based on charges of misconduct which "stigmatize" his reputation, or "'seriously impair'" his opportunity to earn a living, or which "'might seriously damage his standing or associations in his community.'" "Where there is such a deprival of a 'liberty interest' the employee's 'remedy mandated by the Due Process Clause of the Fourteenth Amendment is "an opportunity to refute the charge" [and] "to clear his name."' (*Codd* v. *Velger, supra*, 429 U.S. 624, 627 [5 L.Ed.2d 92, 96].) He must be afforded "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective."' (*Board of Regents* v. *Roth, supra*, 408 U.S. 564, 570, fn. 7 [33 L.Ed.2d, 548, 556, 92 S.Ct. 2701].)" (*Lubey* v. *City and County of San Francisco, supra*, 98 Cal.App.3d 340, 346.)

Although both parties in their briefs appear to go off on arguments of the issue of whether a public entity employer can discipline by indefinite suspension for alleged misconduct without first affording some procedural due process, on careful analysis we do not have to reach that issue.

Defendant city approaches the problem as one that is resolved by our *Fugitt* opinion, i.e., that the arbitration provisions govern; that they go to the determination of whether or not the discharge was arbitrary or capricious; and, if so, then the city could impose a lesser discipline such as suspension without pay which does not require procedural due process.

■ Plaintiff approaches the problem from the liberty interest tack, i.e., there was a liberty interest. It was violated by the discharge which was without any due process. Therefore, it comes within the *Lubey* doctrine. Therefore, no matter what the city tried to do in the way of ex post facto imposition of lesser discipline, plaintiff is entitled to his back pay for the period of time of wrongful discharge.

We find the plaintiff's position the better taken, and, in accordance with the *Lubey* decision, hold that plaintiff, as a probationary employee

had the liberty rights alluded to in *Lubey*. He was discharged without any notice, opportunity to answer charges, or hearing. He was discharged as a result of charges of stealing being levelled at him.

The trial court erred when it determined the case on the findings of fact and conclusions of law set forth above, and particularly its conclusions that the case is controlled by *Fugitt* and that no liberty interests are involved.

In view of our analysis and conclusion expressed above, it appears that *Fugitt* is neither applicable nor controlling. *Fugitt* did not consider the liberty interest problem, because it was not raised. There, as here, the petitioners were probationary employees and were terminated arbitrarily and capriciously. Petitioners then filed their petition for writ of mandate and the city's demurrer was sustained. In *Fugitt*, we only held that it was an abuse of discretion for the trial court to sustain, without leave to amend, a demurrer to the petition filed in that case. *Fugitt* was concerned only with the MOU proceedings and the rights generated thereunder—not constitutional liberty interest rights. When the arbitrator found the discharge of petitioners was arbitrary and capricious, he exhausted his jurisdiction and it was then incumbent on the city to either try to impose a lesser discipline which would not have been subject to the grievance procedure, or reinstate petitioners with back pay for the period during which they were wrongfully deprived of their positions. *Fugitt* is still good law, but it did not address the issue with which we are concerned here.

Having concluded as we have, to what extent is plaintiff entitled to relief? ██ California courts have consistently held that a public employee who has been deprived unlawfully of his position is entitled to recover the full amount of the salary which accrued to him from the date of his unlawful discharge to the date of his reinstatement, and mandamus is a proper vehicle to compel payment of back salary. (*Fugitt v. City of Placentia, supra*, 70 Cal.App.3d 868; *Wylie v. State Personnel Board* (1949) 93 Cal.App.2d 838 [209 P.2d 974]; *Pennycook v. Boyle* (1915) 26 Cal.App. 301 [146 P. 895].) ██ In plaintiff's case, the period of back pay and benefits is determined to be from the date of his "discharge/suspension" to December 30, 1975, when he was reinstated. ██ The authorities cited above and *Currieri v. City of Roseville* (1975) 50 Cal.App.3d 499 [123 Cal.Rptr. 314], further illustrate the requirement that the wrongfully discharged or suspended

employee be required to mitigate his damages. This matter will have to be resolved by the trial court on remand in accordance with the applicable law. In this connection, it is noted that plaintiff in his original petition asked for general damages, loss of earnings and benefits, damages for loss of his home, and attorney fees. Defendant, from the inception, opposed the grant of general or special damages on a writ of mandate proceeding. The matter was still in issue at the time of trial. However, it has not been addressed in the plaintiff's arguments except in his contention that the city is liable under 42 United States Code section 1983 (the Civil Rights Act) and *Owen* v. *City of Independence, Missouri* (1980) 445 U.S. 622 [63 L.Ed.2d 673, 100 S.Ct. 1398]. Actions under the so-called Civil Rights Act (42 U.S.C. § 1983) are properly actions at law seeking monetary redress for wrongs committed. However, it is clear from the language of all the moving papers and the thrust of all plaintiff's arguments that he was seeking reinstatement for the period June 24, 1975, to December 30, 1975, with "restoration of all wages and benefits. . . ."

■ Finally, plaintiff argues for his attorney fees under either Government Code section 800 or under Code of Civil Procedure section 1021.5. He is not entitled to such fees under Government Code section 800, for that section is applicable only to civil actions appealing from a finding or award or other determination of an administrative proceeding. But plaintiff is not appealing any finding or award or other determination of the arbitrator—he seeks a writ of mandate compelling back pay from his employer because of disciplinary action taken against him by that employer contrary to his constitutional rights. No appeal from the administrative hearing is involved.

Should plaintiff recover fees under Code of Civil Procedure section 1021.5? This is the so-called "private attorney general doctrine" where fees may be recovered by a successful party. Defendant argues that plaintiff is not the successful party, and, therefore, his request is premature. Only if he became the successful party by a reversal of the trial court and by issuance by the trial court of the writ, could he successfully move for such fees, if he could show his coming within Code of Civil Procedure section 1021.5. But, defendant argues, even then plaintiff should not recover attorney fees because the decision would not affect the general public, or a large class of persons, nor would it involve the vindication of an important right affecting the public interest. Defendant further claims that plaintiff is not arguing for a change in the law

or any expansion of any existing doctrines. We disagree with the contentions of defendant, for it is clear that clarification and expansion of the law at the very least is what is at the heart of this case. The decision has an impact over a very wide area of virtually all employees in the public sector. Certainly it would statistically seem to qualify with "working women who become pregnant and unemployed." (*Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658 [156 Cal. Rptr. 584]. See also *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200].) Nor do we agree with defendant's first conclusion that the proper procedure is for the trial court to consider this matter on remand. This is the procedure followed in *Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d 917. There, the Supreme Court reversed a trial court's denial of fees and remanded based on the intervening enactment of Code of Civil Procedure section 1021.5. Here, we have the case where the trial court never got to the issue because of its decision on the merits. It appears to us that where the entire basis for the decision in this regard is what we have done in this opinion, we should make the decision that it qualifies as a case for granting of fees. We do so decide and conclude that plaintiff qualifies under substantial benefit concepts and the private attorney general rule. Of course, the matter does have to go back on remand for the trial court to determine the fees to which petitioner is entitled under Code of Civil Procedure section 1021.5 for attorney's services both at the trial and the appellate level. (*Gunn* v. *Employment Development Dept., supra*, 94 Cal.App.3d 658, 666.)

The judgment is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

Kaufman, Acting P. J., and McDaniel, J., concurred.