[Civ. No. 67624. Second Dist., Div. Three. Sept. 27, 1984.]

TOM M. FORREST, Plaintiff and Respondent, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY
AND COLLEGES et al., Defendants and Appellants.

## COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and John J. Crimmins, Deputy Attorney General, for Defendants and Appellants.

Bernard L. Allamano and Robert W. Feinstein for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Appellants, Trustees of the California State University and Colleges (Trustees) appeal from a judgment granting respondent Tom M. Forrest's (Forrest) petition for a writ of mandate directing the Trustees to process Forrest's grievance, pay him back salary and allow him reasonable attorneys' fees and costs.

Because Forrest's grievance hearing request was timely filed, we affirm the issuance of the writ and award of attorneys' fees and costs, but reverse as to the order of backpay.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

On March 9, 1981, Forrest, a probationary employee at California State Polytechnic University (University), received notice of his termination for failure to pass his probationary period as a custodian. The termination was to be effective March 13, 1981.

On April 26, 1981, Forrest filed a request for a grievance hearing challenging his dismissal in accordance with executive order 262 (Order)[2] through his employee organization, California State Employees' Association (CSEA). The Order sets forth the procedure by which University nonacademic and administrative employees may "grieve" various adverse decisions of the employer.[3]

In a letter dated May 11, 1981, Forrest was informed that his grievance request had been rejected as it was untimely filed, in that it was filed more than 14 days after the last day he was employed by the University, as enunciated in provision II (2) of the Order.

On January 8, 1982, Forrest filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1085 to compel the Trustees to process

---

[1]The factual picture is taken from the allegations in the pleadings.

[2]Executive order 262 is an administrative order created by the University for its employees.

[3] "GRIEVANCE PROCEDURE FOR NONACADEMIC AND ADMINISTRATIVE EMPLOYEES

". . . . . . . . . . . . . . . . . . .

"II. Application

"This procedure shall apply to: . . .

"(2) Persons who were employed by a campus 14 calendar days immediately preceding the filing of the grievance and who were members of the Public Employees Retirement System during their actual employment and who were in positions in the nonacademic and the administrative job categories as defined in the current CSUC Salary Schedule and Section 42700(m) and (o), Title 5, California Administrative Code.

"III. Time Limits

". . . . . . . . . . . . . . . . . . .

"All time periods specified herein may be extended by written agreement of the grievant and the President.

". . . . . . . . . . . . . . . .

"VII. Time Limits for Filing a Grievance

"Notice of a grievance . . . must be filed within 45 calendar days after the grievant has discovered or reasonably should have discovered the action, and not more than one calendar year following the action regardless of the time of discovery."

his grievance and to pay him back salary from the date of his dismissal.[4] In support of the petition, Forrest filed a declaration of the CSEA representative who had filed the grievance indicating the filing was done in reliance upon language of provision VII of the Order.

Also received into evidence was the declaration of another CSEA field representative who had been filing grievances pursuant to the Order for three years. That representative did so with the understanding that rejected probationary employees had 45 days to grieve their termination, and that in another case a grievance had been filed for a terminated probationary employee, which grievance the Trustees had considered although it was filed beyond the 14-day period.

The Trustees submitted a declaration of their general counsel indicating they had been advised that the period for filing the grievance was 14 days, and that there existed no contrary interpretation of the Order.

After consideration of the exhibits and written and oral arguments, the trial court made its decision on May 4, 1982. The trial court granted the petition, setting forth its comments for the record and indicating that said comments constituted the statement of decision as follows: "I grant it, because I believe that the regulations are hopelessly confusing; that there is a 45-day statute of limitations in there, and that Section II-B cannot reasonably be expected by [*sic*] read as a 14-day statute of limitations."

On June 1, 1982, judgment was entered, and on July 15, 1982, the Trustees appealed.

## CONTENTIONS

The Trustees contend that: (1) the judgment should be reversed because Forrest's grievance was untimely as it was not filed within 14 days after the termination of his employment; (2) the trial court erred in ordering backpay to Forrest; and (3) the trial court erred in awarding attorneys' fees and costs to Forrest.

## DISCUSSION

1. *The 45-day time limit controls the filing of employees' grievances.*

The Trustees contend that issuance of the writ was improper because they had no duty to process Forrest's grievance as it was untimely filed. There-

---

[4]Code of Civil Procedure section 1085 provides that a writ of mandate "may be issued . . . to compel the performance of an act which the law specially enjoins . . . or to compel the admission of a party to the use and enjoyment of a right . . . to which he is entitled, and from which he is unlawfully precluded . . . ."

fore, the crucial issue is whether the time limit under the Order is 14 days or 45 days.

As set forth *ante,* provision II refers to "Application," and (2) thereunder identifies "Persons who were employed by a campus 14 calendar days immediately preceding the filing of the grievance . . . ." Provision III is specifically entitled "Time Limits," and VII is entitled "Time Limits for Filing a Grievance" and states, "Notice of a grievance . . . must be filed within 45 calendar days after the grievant has discovered or reasonably should have discovered the action, . . ."

■ Generally, the same rules of construction that apply to statutes govern the interpretations of rules and regulations of administrative bodies. (*Cal. Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Westfall* v. *Swoap* (1976) 58 Cal.App.3d 109, 114 [129 Cal.Rptr. 750].) Further, if the trial court's interpretation is reasonable, it must stand.

A review of certain rules of statutory construction is pertinent. The basic objective of statutory construction is to ascertain the purpose of the legislation and to effectuate that intent. (*Rosenthal* v. *Cory* (1977) 69 Cal.App.3d 950, 953 [138 Cal.Rptr. 442].) Where the meaning of the statute is plain and its language clear and unambiguous, the court must follow the language used and give it its plain meaning. (*Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 360 [90 Cal.Rptr. 657].)

The Trustees have the burden to demonstrate that the ordinary and customary import of the Order's language is either repugnant to the general purview of the Order, or for some other compelling reason, should be disregarded; otherwise we must give to the Order its "plain meaning." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].)

Applying these rules to the Order, we find the language of provision VII clear on its face. Not only is this provision specifically set forth as "Time Limits for Filing a Grievance,"[5] it also expressly states that, "[n]otice of a grievance must be filed within 45 calendar days after the grievant has discovered or reasonably should have discovered the action, . . ."

---

[5]We are aware that a section heading of a statute or order is not necessarily dispositive of the writer's intent. (Cf. *Tiernan* v. *Trustees of Cal. State University & Colleges, supra,* 33 Cal.3d at p. 220, fn. 12.)

However, when considered together, the *applicability* provision II and the *time limit* provision VII of the Order are seemingly contradictory and ambiguous, and as such should be resolved against the Trustees. (*Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 70 [87 Cal.Rptr. 731].) The trial court openly proclaimed that the Order was "absolutely bewilderingly confusing," and "a masterpiece of ambiguity," and reasonably interpreted the provisions as allowing Forrest 45 days within which to file a grievance request.

While the Trustees are correct in their assertion that a "particular intent will control a general one that is inconsistent with it" (Code Civ. Proc., § 1859), they argue that provision II (2) is the more specific. We disagree.

Provision VII is clearly more explicit as the explanatory title is more precise than provision II, and the actual language, narrower.

The Trustees also put forth the point that an administrative agency's interpretation of one of its own regulations is entitled to great weight and should be followed, unless it is clearly erroneous. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672].) A more accurate statement of this rule was enunciated by the Supreme Court in *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]: "*The interpretation of a regulation,* like the interpretation of a statute, *is, of course, a question of law* [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the *ultimate resolution of such legal questions rests with the courts.*" (Italics added; accord *Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900, 905 [167 Cal.Rptr. 366, 615 P.2d 555]; *Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701]; *Bar Master, Inc.* v. *State Bd. of Equalization* (1976) 65 Cal.App.3d 408, 412-413 [135 Cal.Rptr. 272].)

All things considered, we find as a matter of law that the 45-day statute of limitation controls in the grievance procedure.

2. *The trial court erred in ordering the Trustees to pay Forrest backpay.*

The judgment of the trial court stated, in part: "2. Petitioner [Forrest] shall be paid back salary from the effective date of his termination, March 13, 1981, to the date the grievance is processed by respondents [Trustees], in accordance with Executive Order 262."

The Trustees contend that the judgment ordering them to pay back salary to Forrest was error because the trial court's order therefor was premature.

They claim that, assuming arguendo Forrest has a right to a grievance hearing, the University grievance committee would have to convene and decide whether to reinstate Forrest. They stress that he would not be entitled to backpay if his rejection during probation were upheld.

Forrest cites a number of cases in support of the award which appear to be inapposite. Both *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306] and *Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521 [155 Cal.Rptr. 589], awarded backpay to nonprobationary employees who had been dismissed without proper procedural safeguards, but these awards were made *after there had been a hearing to either uphold or overturn the dismissal.*

Nor does *Tiernan* afford Forrest any assistance. In that case, although the state had failed to adopt regulations concerning notice to temporary academic employees whose appointments were not going to be renewed, the employee there was not awarded backpay because the procedural error was deemed harmless. (*Tiernan* v. *Trustees of Cal. State University & Colleges, supra,* 33 Cal.3d at p. 221.)

■ In the instant case, although cognizant that Forrest was refused a grievance hearing in the first instance, in fact he has not yet had a hearing to determine if his probationary dismissal were proper. Therefore, it is still not clear whether he suffered any prejudice in his claim for backpay by the Trustees' refusal to grant the grievance request.

Education Code section 89540 cited by Forrest is not helpful. It states: "If the dismissal, . . . is revoked or modified by . . . the trustees, the employee shall be restored to his position in accord with the decision, and shall be paid back salary equal to that which the employee would have earned if continuously employed in accord with the decision."

Not only has there been no hearing of Forrest's grievance, even if his dismissal were revoked, there is no authority entitling a *probationary* employee to backpay. (See *Frost* v. *Trustees of California State University and Colleges* (1975) 46 Cal.App.3d 225, 229-231 [120 Cal.Rptr. 1].)

Frost was a *probationary* employee of the California State University system and filed a grievance pursuant to applicable grievance procedures as a result of being notified he would not be reappointed. Following the grievance, he was ordered reinstated but without backpay. He filed for a writ of mandate challenging the denial thereof. The trial court denied the petition and the decision was affirmed.

The court in *Frost* noted there was no provision for backpay awards in stating, "[b]y the creation of this grievance procedure, which is available to both permanent and probationary employees, there appears to be no intent to bestow upon *probationary* academic employees any rights to back salary upon rehiring, but merely to grant them a procedure [for] . . . review . . . ." (Italics added; *id.,* at p. 230.)[6]

After perusing the applicable Education Code sections contained in article 2 dealing with appointment, tenure, layoff and dismissal of employees (§§ 89530-89546), it appears clear that probationary employees are not accorded the same procedures as regular employees. While Education Code section 89539 allows dismissals, suspensions and demotions of *regular* employees to be appealed to the State Personnel Board, the rejection of *probationary* employees is governed by rules adopted by the Trustees. Education Code section 89534 states in pertinent part: "The trustees shall adopt rules prescribing the form, time and method of notice of rejection at any time during the probationary period to any probationary nonacademic employee . . . ."

We are left with the conclusion that the trial court's order for backpay was premature, and more importantly, that there exists no procedure to provide for such backpay awards to probationary employees.

3. *The trial court did not err in awarding Forrest attorneys' fees.*

The trial court stated in its judgment: "3. Petitioner [Forrest] shall recover reasonable attorney's fees in the amount to be fixed by the court in accordance with Government Code Section 800." (§ 800.)

The Trustees claim that section 800 applies only in cases involving judicial review of "the award, finding, or other determination of administrative proceedings," suggesting the phrase has a particular meaning for the purpose under consideration. They also maintain that even if section 800 would apply, the Trustees' decision that Forrest's grievance was untimely was neither arbitrary or capricious.

a. *Section 800 is applicable in the instant case.*

Section 800 states in pertinent part: "In any civil action to appeal or review the award, finding, or *other determination of any administrative*

---

[6]Education Code section 89540 was codified as Education Code section 24310 at the time of the *Frost* decision.

*proceeding* . . ., where it is shown that the award, finding, or other determination of such proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof . . ., the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars ($1,500), where he is personally obligated to pay such fees, from such public entity, in addition to any other relief granted or other costs awarded." (Italics added.)

The Trustees, citing to *Wilkerson* v. *City of Placentia* (1981) 118 Cal.App.3d 435, 444 [173 Cal.Rptr. 294] and *Williams* v. *Department of Water & Power* (1982) 130 Cal.App.3d 677, 685 [181 Cal.Rptr. 868], emphasize the writ was not an action to review an "administrative proceeding," so section 800 is inapplicable.

In *Wilkerson,* a probationary employee sought a writ of mandate to compel backpay for a disciplinary action in violation of his constitutional rights. The court denied costs under section 800 because it was not an appeal from a finding or award or other determination of an administrative hearing. (*Wilkerson* v. *City of Placentia, supra,* 118 Cal.App.3d at p. 444.)

*Williams,* relying on *Wilkerson,* held that section 800 did not apply to an *appeal from a judgment of the superior court* denying a former public employee's petition for writ of mandate to compel her reinstatement to a part-time position. (*Williams* v. *Department of Water & Power, supra,* 130 Cal.App.3d at p. 685.)

The Trustees also cite to the recent case of *Ferris* v. *Los Rios Community College Dist.* (1983) 146 Cal.App.3d 1, 11 [194 Cal.Rptr. 16], wherein part-time instructors of a community college district sought a writ of mandate to compel the district to grant them status as regular employees. The *Ferris* court held that section 800 did not apply to every decision of an administrative official, but was only applicable "where review is sought of action taken as a result of an administrative hearing required or provided by law." (*Ibid.*)

■ The reasons for disallowing the applicability of section 800 in the above-cited cases do not apply to the present fact situation. We believe section 800 was not meant to be interpreted so narrowly. The language of section 800 clearly indicates an intent by the Legislature to allow a prevailing petitioner attorneys' fees for reviewing arbitrary or capricious action or conduct by a public entity or officer thereof of an "award, finding, *or other determination of any administrative proceeding.*"

Contrast this language with Code of Civil Procedure section 1094.5 which states in pertinent part: "(a) Where the writ is issued for the purpose of inquiring into the validity of any *final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer*, the case shall be heard by the court sitting without a jury." (Italics added.)

Section 800 could have been written with the same language as Code of Civil Procedure section 1094.5, but the Legislature chose the broader term "proceeding" rather than limiting it to a "hearing." Therefore, it would be erroneous to construe the two words synonymously.

Here, Forrest's denial of his grievance resulted from an administrative decision of some public officer or officers which occurred necessarily at an "administrative proceeding." His alleged denial of rights was no less because the denial did not follow a full-blown administrative hearing, nor were the attorneys' fees and costs for seeking review any less.

In at least two cases, courts have allowed section 800 attorneys' fees for review of administrative proceedings where there was no *formal administrative hearing*. In *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 335 [142 Cal.Rptr. 111], when the school board made an administrative decision to delete certain extra payments to teachers, the teachers filed a grievance in accordance with the district's grievance procedure. After receiving a letter from the district denying the grievance, the teachers filed a petition for a writ of mandate to compel payment. (*Id.* at p. 336.) Although there was no formal hearing by the school board prior to denying the teachers' payment, nor was there one by the district after the denial of the teachers' grievance, the appellate court sustained the trial court's application of section 800. (*Id.* at pp. 342-343.)

Likewise, in *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 284 [159 Cal.Rptr. 528], a probationary teacher who had voluntarily resigned his position was assaulted by a student three days prior to his resignation becoming effective. The next day the principal of the school rated the teacher's work unsatisfactory in a performance report. The teacher immediately demanded an investigation and hearing as required by district grievance procedures. The district denied his demands principally on the ground that the teacher, as an ex-employee, was no longer entitled to these procedures. The teacher initiated litigation, with the trial court granting partial summary judgment for the defendant and issuing an alternative writ of mandate. (*Ibid.*) Although apparently there was no "hear-

ing," the trial court found section 800 applicable, but upheld the denial of fees as the action or conduct was not arbitrary or capricious, and the appellate court affirmed. (*Id.* at p. 290.)

In the instant case, Forrest's grievance was summarily denied in a letter without any formal administrative hearing having taken place. (See *Ferris v. Los Rios Community College District, supra,* 146 Cal.App.3d at p. 11.) As noted, section 800 specifically allows "appeal or review [of] the award, finding, or other determination of *any administrative proceeding* . . . ." *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist., supra,* 75 Cal.App.3d at page 342, recognized that section 800 provides fees and costs for review by a civil action of *"an administrative determination"* by a public entity.

There is no rationale for limiting section 800 to "appeal or review" from a formal administrative hearing. It is a remedial statute designed to enable employees to seek relief in the courts against arbitrary or capricious action by public entities or officers, and as such, should be liberally construed.

While Forrest did not become "personally obligated to pay [attorneys' fees and costs] . . .," he was obligated as a member to pay monthly dues to CSEA, which dues in part pay the expenses of its legal staff.

b. *The trial court did not abuse its discretion in finding the Trustees' actions arbitrary or capricious*:

The Trustees argue even if section 800 were applicable, their action was neither arbitrary nor capricious.

■ A finding that governmental conduct is arbitrary or capricious under section 800 is essentially one of fact within the sound discretion of the trial court, and will be sustained on appeal unless an abuse of discretion is shown. (*A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist., supra,* 75 Cal.App.3d at p. 343; accord *Mitchell* v. *State Personnel Bd.* (1979) 90 Cal.App.3d 808, 814-815 [153 Cal.Rptr. 552]; *Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254, 258 [151 Cal.Rptr. 724].)

We find no abuse of discretion here. The trial court had ample evidence to characterize the Trustees' action or conduct as arbitrary or capricious in the form of pleadings, exhibits and declarations submitted by both sides.

## Conclusion

The writ of mandate was properly issued as the 45-day time limit controlled, and Forrest filed his grievance within that period. Because there is no provision or statutory authority, and because the ruling therefor was premature, the trial court erred in ordering the Trustees to pay back salary. Finally, the trial court did not abuse its discretion in awarding attorneys' fees and costs under section 800.

## Disposition

The judgment is affirmed as to the issuance of a writ of mandate and the awarding of attorneys' fees and costs, but reversed on the order of back salary.

Lui, J., and Arabian, J., concurred.