[No. A058334. First Dist., Div. Five. May 18, 1993.]

KATHLEEN KISTLER et al., Plaintiffs and Appellants, v. REDWOODS COMMUNITY COLLEGE DISTRICT, Defendant and Appellant.

John F. Shields, Jr., for Plaintiffs and Appellants.

Robert J. Henry for Defendant and Appellant.

**OPINION**

**PETERSON, P. J.**—The trial court, in a summary judgment proceeding, concluded Redwoods Community College District (District) improperly denied Kathleen Kistler, Allen Keppner, and Gary Peterson (respondents), certain of its outgoing administrators, their accrued vacation pay. The District had reassigned respondents to work as faculty members, but ordered them off the premises in order to use up their accrued vacation pay immediately before the change, rather than allowing them to serve out the remainder of their annual terms as administrators. The trial court ruled for respondents and also granted respondents their attorney fees.

We affirm in part, reverse in part, and modify the judgment accordingly. We affirm the trial court's ruling that respondents were wrongfully deprived of accrued vacation pay; we order payment to them of the amounts in issue. We reverse the order granting attorney fees, finding no authority for such an award in this case.

## I. Facts and Procedural History

There are no relevant factual issues in dispute. We summarize the facts here simply as background to the legal issues.

In 1990, respondents had been employed for several years as administrators for District, under written contracts expiring on June 30, 1990. In early March 1990, they were individually notified their contracts to work as administrators would not be renewed for another year. Each was subsequently assigned to work instead in a faculty position as a teacher. Teaching positions do not allow an employee to earn or use accrued vacation pay, since teachers are only employed on a nine-month school-year basis. Respondents had accrued large balances of vacation pay as administrators. In fact, respondents Keppner and Peterson had accrued more than 60 days of vacation by the end of 1989.

In the spring of 1990, negotiations between the District and respondents resulted in agreements allowing certain higher-than-normal teaching salaries to respondents in their first year as teachers, in order to cushion the transition from their more generous full-year salaries as administrators. However, these agreements are silent as to the treatment of accrued vacation pay.

In early April 1990, each respondent was directed to leave the premises early, in April or May, rather than work through to the end of their contracts on June 30, 1990. All three were directed, over their objections, that they must use their balances of accrued vacation pay, or annual leave, under the District's annual leave policy, in order to be paid for the remainder of their contractual terms; they were paid for the value of small amounts of annual leave which could not be exhausted by the forced vacations.

Respondents challenged the legality of this directive, which in effect terminated their annual contracts early, and forced them to use their accrued vacation balances in order to be paid for the remainder of their terms.

After rather extensive proceedings, the trial court ruled that respondents had improperly been forced to go on involuntary vacations in order to deplete their annual leave balances, prior to the June 30 contractual termination date. However, it also ordered that respondents only need be paid for the value of all vacation days exceeding 40, and refused to order payment for the first 40 days accrued and expended by each respondent. Subsequently, the trial court granted respondents their attorney fees.

District filed a notice of appeal and respondents filed a cross-appeal.

## II. DISCUSSION

We affirm the trial court's legal ruling, on cross-motions for summary judgment, that the District acted unlawfully when it effectively forced the early termination of respondents' contracts, and required them to take undesired vacations in order to draw down their balances of accrued vacation leave. However, we will modify the judgment to provide that the value of all wrongfully withheld vacation pay should be awarded to respondents, without regard to the trial court's ruling that only the balance exceeding 40 days should be awarded. Finally, we will reverse the trial court's order granting respondents attorney fees, because there is no authority for such an award in this case.

### A. *Vacation Pay Is a Form of Accrued Wages, Which May Not Be Involuntarily Divested*

■■■ The trial court correctly ruled that the District's action, in requiring respondents to take forced vacations immediately prior to the expiration of their contracts, violated the rule set down in *Bonn v. California State University, Chico* (1979) 88 Cal.App.3d 985 [152 Cal.Rptr. 267] In *Bonn,* an employee of a state university announced his impending retirement on December 30, 1977; he would have had 55 vacation days accrued to him on that date, pursuant to the university's vacation policies. (*Id.* at p. 987.) To save money, the university required Bonn to go on a forced vacation prior to his retirement date, in order to deprive him of his accrued balance of vacation leave prior to his retirement. (*Id.* at p. 988.)

The Third District noted that the university, like private employers, was required, by its own policies and applicable rules of interpretation regarding vacation pay, to pay a departing employee the value of any unused vacation leave previously accrued by the employee. (*Bonn v. California State University, Chico, supra,* 88 Cal.App.3d at pp. 990-991.) The court quite properly rejected the university's claim, that its power to approve or disapprove the *timing* of an employee's proposed vacation plans also allowed it to exercise the quite different power of requiring an employee to go on an unwanted *forced* vacation, prior to leaving employment, so as to evade its contractual and legal obligation to pay the employee for his accrued vacation balance upon termination. (*Id.* at p. 991.) "Thus in general while the timing of vacations in the private sector is left to the employer[] [citation], the employer may not arrange [its] schedule so as to frustrate vacation benefits which have become due and payable, for [its] own economic benefit. [Citation.]" (*Ibid.*) "We merely hold that a public employer may not direct an employee to expend . . . accumulated vacation credit, but that the latter may elect to receive a lump sum payment instead." (*Id.* at p. 992, fn. omitted.)

The Third District's decision in *Bonn, supra,* was cited with approval by our Supreme Court, and its principles were applied, in *Suastez* v. *Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 778-779 and footnote 7 [183 Cal.Rptr. 846, 647 P.2d 122]. The issue in *Suastez* was whether vacation pay vests as it is earned, under the terms of Labor Code section 227.3, as to a private employer—not a public employer as is in issue here, which is not governed by that section of the Labor Code.

The Supreme Court, however, employed general principles of law relating to vacation pay to reach a result consistent with that reached in *Bonn.* "It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.] In an early, oft-cited case determining employees' rights to vacation pay under a collective bargaining agreement, Judge Augustus Hand wrote, 'A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations be-tween employer and employee.' [Citation.] The consideration for an annual vacation is the employee's year-long labor. Only the time of receiving these 'wages' is postponed. [Citation.] [¶] 'Many tribunals have taken the view that vacation pay is simply an alternate form of wages, earned at the time of other wages, but whose receipt is delayed.' [Citations.]" (*Suastez* v. *Plastic Dress-Up Co., supra,* 31 Cal.3d at p. 779.)

The same principles apply here. Respondents had earned large balances of vacation leave from the District. The District allowed employees to earn 20 days' vacation per year, and carry over and accumulate these balances up to a maximum of 40 days' accrued vacation, or up to 60 days' leave to be made payable upon the conclusion of the employment. Significantly, the District policy, policy No. 313, recognizes that vacation leave accrued according to this policy would be paid out in a lump sum to departing administrators: "Administrators serving on a twelve-month contract are entitled to twenty (20) working days vacation each year. These twenty days per year may not be accumulated for more than two years (forty [40] days). To prevent the loss of any accumulated vacation time which exceeds 40 days, the excess must be taken prior to December 31 of that year. The maximum number of days for which an administrator can receive pay in lieu of vacation upon his/her retirement or resignation shall be sixty (60)."

The District policy does *not* provide that employees may be forced to take an unwanted vacation, so as to deprive them of accrued vacation balances prior to their departure dates. It is also well settled that "a district's rules must be construed against the district." (*Bonn* v. *California State University, Chico, supra,* 88 Cal.App.3d at p. 990.) Thus, the District's position—that its

policies are totally silent on the question of forced vacations and that it may, therefore, compel employees to take involuntary vacations in order to reduce their accrued balances of wages due upon discharge—is a non sequitur.[1] *Bonn* requires that, at a minimum, any policy purporting to divest employees of earned wages by means of involuntary vacations would have to be very clearly stated and unambiguous. (*Ibid.*)

Applying the principles of *Bonn, supra,* and *Suastez, supra,* to the District's vacation policy which is applicable in this case, we agree with the trial court that respondents could not be legally compelled to exhaust their accrued vacation balances prior to leaving their contractual positions as administrators, by means of forced vacations. This result is necessary to recognize the vested, accrued nature of vacation pay as wages, earned and payable, but receipt of which is delayed, as defined by *Bonn* and *Suastez.* This result is also necessary to protect the terms in respondents' contracts with the District. Each was to be employed for a term ending June 30. What the District effectively sought to do here was to terminate the contracts instead in April or May, and force respondents to use their accrued vacation pay, wages already earned, to make up the balance. We find nothing in respondents' contracts or the District's policies imported into those contracts which would allow this result.

If the District wished to remove respondents from office for cause, or to suspend or discharge them, prior to the expiration of their terms, it was required to follow accepted procedures affording respondents due process. We do not question the District's decision not to follow that arduous course; but having made its election, the District was required to honor its previous commitments and accrued obligations. These included the obligation to pay respondents in cash, upon their termination, for up to 60 days of accrued vacation pay.

Nor did the negotiations between the District and respondents at the time they were notified of the nonrenewal of their administrative contracts, and the contracts determining their pay during the transition period, make any reference to the issue of vacation pay in order to resolve the dispute. Even though the District suggests its president intended to give respondents high transition salaries in return for their waiver of accrued vacation pay, this was not respondents' intent; and none of the three agreements between the District and each respective respondent, concerning the amount of salary each was to receive in a teaching assignment, suggested that a waiver of

[1]We are also not dealing here with a reasonable rule of an employer, explicitly stated to employees, which requires employees to take their vacations each year or places other limits on accrual of vacation pay. The District has no such written policies.

accrued vacation pay was given as consideration for any increased "transition" salary. There is nothing in the agreements or the record to support a claim of waiver on respondents' part. The undisclosed intent of the District's president, not embodied in any agreement, that respondents should also waive their accrued vacation pay, was insufficient under the parol evidence rule to raise a question of fact as to the proper interpretation of the agreements, which contain no such waiver and are not ambiguous. (See, e.g., *Sunniland Fruit, Inc.* v. *Verni* (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].) There being no relevant disputes of material fact, the trial court properly resolved the legal issue on cross-motions for summary judgment. ■■■ The trial court correctly applied the *Bonn* rule here, as a matter of law.[2]

■ We emphasize, however, that in general it is only *accrued* vacation pay which is protected against divestment or forfeiture by employer directives requiring that a vacation be taken in the future, rather than be paid for in cash at the end of the employment. No case has held that what will happen or vest in the future has already somehow become vested or accrued in the present. The rule against forfeiture of *accrued* vacation rights, by its own terms, cannot apply to vacation pay which is to be earned in the future, i.e., which has not yet accrued.

Thus, an employer may certainly direct an employee, by specific order or general policy, to take a vacation in the future; the employer may validly bar accrual of further vacation leave unless the specified vacation is taken. (See *Boothby* v. *Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1602 [8 Cal.Rptr.2d 600] ["Since no more vacation is earned, no more vests. A 'no additional accrual' policy, therefore, does not attempt an illegal forfeiture of vested vacation."].)

■ An employer directive or policy requiring that a vacation be taken, however, cannot legally divest the employee of vacation rights already earned and accrued; and the employer may only prevent the accrual of vacation to be earned in the future. To take the present case as an example, the District in April 1990 could have validly directed appellants to take vacation days equivalent to those which appellants would have earned between April 1990 and June 1990, when the employment was to end; the

---

[2]Contrary to the District's assertions at oral argument, the higher salaries paid to respondents during the period of their transition to lower teacher salaries did not constitute a forbidden gift of public funds. These transition salaries were paid in order to secure respondents' agreement to leave their administrative positions without further legal challenge, and in order to ameliorate the short term damage to their personal finances caused by the District's actions. Such compromises are an allowable public expense; otherwise, litigation involving a public entity could never be compromised or settled.

District could have conditioned accrual of additional, future, vacation leave on this requirement, and could have prevented additional accrual by this method. However, this is not what the District did. It forced appellants to take a vacation equivalent to all their vacation leave earned and accrued prior to April 1990, and thereby sought to achieve a forbidden forfeiture.

In the present case, the parties stipulated in the trial court to the amounts of vacation leave in issue as to each appellant, as the accrued leave to be recovered if the District's action was improper. Consequently, we need not recalculate the amounts in issue. Pursuant to that stipulation, the trial court properly concluded the amounts, stipulated to be accrued, were wrongly divested.

### B. *The Remedy*

■ However, both respondents and District agree the trial court's limited remedy is illogical and unworkable, and it must be modified. The trial court did not award respondents the full value of their wrongfully withheld vacation pay, which the District's policy quoted above provides will be paid to administrators upon departure. Rather, the trial court directed that only the portion of the accrued pay which exceeds 40 days must be paid to respondents; as to the remainder, the trial court apparently sought to restore this to respondents as a balance of accrued vacation leave, to be taken at some future date.

As the parties correctly point out, the result fashioned by the trial court makes no sense in this case. The 40-day limit on annual carryover of balances has no logical relation here as a limit upon payment; the amount of vacation pay which must be paid out as a lump sum upon termination of employment is 60 days, not 40. Further, respondents could not use their accrued vacation balances of 40 days, as refashioned by the trial court, since they are no longer employed as administrators for the District. They are employed as teachers, who do not earn, and cannot use, vacation leave since they must work for the school year, not on a 12-month basis as do administrators. The District obviously does not desire to have teachers disappearing for 40 days in the middle of an ongoing school term or class. Further, the District policy in issue here requires payment for accrued and unused vacation leave, not a carryover into another job category which does not earn or use vacation leave.

The parties have previously stipulated to all the relevant facts, from which we can calculate and modify the judgment. We will modify the judgment accordingly, to provide that respondents shall recover as follows: Respondent Kistler shall recover $10,053.28; respondent Keppner shall recover

$15,785.40 (for the maximum of 60 days' payment allowed); and respondent Peterson shall recover $9,100.80; all respondents shall receive interest as allowed by law from June 30, 1990.

C. *Attorney Fees*

■ As to attorney fees for respondents, the trial court awarded them $12,000 under Government Code section 800 (section 800). However, as this court recently held, per Justice Haning, section 800 does not allow an award of fees here; it only applies to the appeal of a decision from an administrative hearing, which never occurred or was contemplated here. (*Sullivan* v. *Calistoga Joint Unified School Dist.* (1991) 228 Cal.App.3d 1313, 1319 [279 Cal.Rptr. 529].) In *Sullivan*, we explained that only appeals from a final administrative determination by an administrative law judge—not every administrative determination by a public agency—triggered the fee-shifting provisions of section 800. (*Ibid.*) In so holding, we implicitly rejected the view taken in certain dicta of the Second District in *Forrest* v. *Trustees of Cal. State University & Colleges* (1984) 160 Cal.App.3d 357, 367-368 [206 Cal.Rptr. 595], which suggested any administrative decision might qualify for attorney fees on appeal under section 800. We note that the result in *Forrest*, as opposed to the broad dicta contained therein, was correct. In *Forrest*, the employee sought a grievance hearing to which he was entitled, but the state university refused to convene the hearing. (P. 368.) Since an administrative hearing would have been held, for the protection of the employee and at his request, if not for the illegal act of the state university, section 800 could apply despite the fact that, technically, no administrative hearing had taken place. (*Ibid.*)

However, the general rule, as stated in decisions of the Second District, the Fourth District, and this district, is that section 800 does not apply where there is no right to an administrative hearing. (See *Williams* v. *Department of Water & Power* (1982) 130 Cal.App.3d 677, 685 [181 Cal.Rptr. 868] [Section 800 did not apply where plaintiff's employment was not governed by civil service rules guaranteeing a hearing to challenge a discharge.]; *Wilkerson* v. *City of Placentia* (1981) 118 Cal.App.3d 435, 444 [173 Cal.Rptr. 294] [Section 800 did not apply where the employee was reinstated as a result of his grievance hearing, but sought a backpay award which was not subject to the grievance procedure.]; *Sullivan* v. *Calistoga Joint Unified School Dist.*, *supra*, 228 Cal.App.3d at p. 1319 [Section 800 did not apply to a dispute over the funding and permanency of the employee's position, because this was not an appeal from an administrative decision.].) The trial court's award of fees under section 800 was, therefore, erroneous.

Respondents attempt to suggest other statutory bases for the fee award, but none of them apply here. Labor Code sections 218.5 and 220, allowing

an award against a "private" employer who wrongfully withholds earned wages, does not apply to public employers such as the District, which is a "municipal corporation" for purposes of the Labor Code and, therefore, exempt from a fee award. (See *Division of Labor Law Enforcement* v. *El Camino Hosp. Dist.* (1970) 8 Cal.App.3d Supp. 30 [87 Cal.Rptr. 476].) Code of Civil Procedure section 1021.5, the private attorney general statute, is also inapplicable; respondents were not disinterested citizens seeking to establish new law on a question of public importance, they were simply seeking the wages due to them. (See *Wang* v. *Division of Labor Standards Enforcement* (1990) 219 Cal.App.3d 1152, 1161-1162 [268 Cal.Rptr. 669].) Finally, Education Code section 44944 applies to the dismissal of teachers in elementary and secondary schools, not administrators in college districts such as respondents. None of these statutes allows an award of attorney fees in this case.

III. DISPOSITION

The trial court's ruling on liability is affirmed, but the judgment is modified as follows: Respondent Kistler shall recover $10,053.28; respondent Keppner shall recover $15,785.40; and respondent Peterson shall recover $9,100.80; all respondents shall receive interest as allowed by law. The order awarding attorney fees is reversed. All parties shall bear their own costs on appeal.

King, J., and Haning, J., concurred.