[Civ. No. 17406. Third Dist. Jan. 30, 1979.]

JAMES L. BONN, Plaintiff and Respondent, v.
CALIFORNIA STATE UNIVERSITY, CHICO et al.,
Defendants and Appellants.

## COUNSEL

Evelle J. Younger, Attorney General, and Carol Hunter, Deputy Attorney General, for Defendants and Appellants.

Loren E. McMaster and E. Terry Besbris for Plaintiff and Respondent.

## OPINION

**KARLTON, J.***—California State University, Chico, and Dr. Stanford Cazier, its president,[1] appeal from a judgment granting a peremptory writ of mandate (prohibition) to petitioner James L. Bonn.

The record on appeal does not include the reporter's transcript. Accordingly, the statement of facts is taken from the findings of fact made by the trial court.

Prior to his retirement Bonn was a technician III employed by the University. He had apparently been so employed for approximately 14 years. In early 1977 Bonn announced his intention to retire on December 30, 1977, at which time it was expected Bonn would have accumulated 55 days of vacation, 40 of which were carried over from previous years.[2]

---

*Assigned by the Chairperson of the Judicial Council.

[1]Hereinafter collectively referred to as University.

[2]While not within the findings of fact it appears Bonn was accumulating vacation in order to receive a lump sum payment upon his retirement. With this money he apparently planned to purchase a mobile vacation home and tour the country.

After announcement of his retirement plans, Bonn was directed by the chairman of the psychology department to use portions of his accumulated vacation on certain specified dates in June and July 1977. The basis of the directive was to require Bonn to reduce his accumulated vacation during times when classes were not in session, so as to lessen the impact of his retirement with substantial vacation credit.[3]

Unhappy with this directive Bonn thereafter filed a grievance with the University. After two informal levels of grievance procedure the grievance committee in a written opinion recommended that consistent with University practice Bonn "should be granted his option of receiving his accrued vacation in lump sum payment upon his retirement." On July 28, 1977, the University declined to follow the committee's determination and ordered Bonn to use 21 days of vacation between August 1, 1977, and December 30, 1977, to be taken when classes were not in session.[4]

Bonn then sought mandate. After trial the court entered a judgment restraining the University from compelling Bonn to take more than 15 days vacation (i.e., the vacation earned during the year and not the accumulated vacation) prior to his retirement. From this judgment the University appeals.

■ Initially we are faced with a question of mootness since the writ of mandate expired upon Bonn's retirement in December; nonetheless, we believe the case should be resolved on its merits. The case raises a matter of first impression concerning the utilization of accumulated vacation by public employees. It is an issue of continuing interest to both public employers and public employees, and by virtue of the ephemeral nature of accumulated credit will not likely reach the court as a viable issue. It is now settled law that a case of significant public interest may be resolved even though it would otherwise be dismissed as moot, (see, e.g., *D. I.*

---

[3]During the grievance procedure briefly discussed, *infra*, the University took the position that Bonn's accumulation of 55 days of vacation would encompass approximately 3 working months. During this period the University asserted it would be unable to hire Bonn's replacement, as the funds for such a position would be going to Bonn.

Since the court made no findings concerning the alleged impact, we do not know if contingency funds existed in the department's budget, or whether other University technical employees were available to perform Bonn's duties; however we note that the grievance review committee found that Bonn's plan was consistent with long-standing practice, Bonn was the first employee ordered to use his accumulated vacation, and that other staff could be employed. The president in reversing the grievance committee made no different findings.

[4]This order had the practical effect of requiring Bonn to take the 21 days vacation during August 1977, and over the Christmas holidays.

*Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717]; *Lemat Corp.* v. *Barry* (1969) 275 Cal.App.2d 671 [80 Cal.Rptr. 240]) and a case should be resolved where the issue presented is "capable of repetition, yet evading review." (*So. Pac. Terminal Co.* v. *Int. Comm. Comm.* (1911) 219 U.S. 498, 515 [55 L.Ed. 310, 316, 31 S.Ct. 279]; *Roe* v. *Wade* 410 U.S. 113, 125 [35 L.Ed.2d 147, 161, 93 S.Ct. 705].) Accordingly we now turn to the substantive issue.

Education Code section 89500 provides in pertinent part: " . . . the trustees [of the California State University] shall provide by rule for the government of their . . . employees, pursuant to the provisions of this chapter and other applicable provisions of law, including but not limited to . . . vacation . . . ."

In pursuance of such authority the trustees have provided: "Each employee . . . is allowed for each month of service that number of days of vacation currently specified in the statutes and regulations governing state civil service employees, and his vacation right shall be determined as provided therein. The president of the campus in which such an employee is employed . . . shall determine when the employee shall take vacation." (Cal. Admin. Code, tit. 5, § 42904.)

Both the statutes and regulations provide a separate set of rules relating to accumulated leave. Government Code section 18052 provides: "The appointing power of any . . . employee not a member of the civil service may promulgate regulations governing vacations for . . . employees. In the absence of such regulations, the rules of the State Personnel Board relating to the regulation and methods of accumulation of vacation for civil service employees shall govern." Moreover, as noted above the trustees have made the state personnel regulations applicable to their employees. (Cal. Admin. Code, tit. 5, § 42904.)

California Administrative Code, title 2, section 383 state personnel regulations) provides: "In the event an employee is not permitted to take all of the vacation to which entitled in a calendar year, the employee shall be permitted to accumulate the unused portion, provided, that on January 1st of any calendar year the employee shall not have a total credit of vacation of more than . . . 40 working days for more than 10 years of service. . . .

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Upon separation from service without fault an employee shall be paid for accumulated vacation credit . . . ."

The latter provision of section 383 is merely an implementation of Government Code section 18005 which specifically provides: "(a) Upon separation from service without fault on his part, a person is entitled to a lump sum payment as of the time of separation for any unused or accumulated vacation . . . ."

■  The University in essence argues that by virtue of the authority of the president to determine when an employee shall take vacation, it has an unrestricted right to require an employee to utilize accumulated vacation. The employee on the other hand urges that such an interpretation defeats the statutory and regulatory right of an employee to a lump sum payment for accumulated leave upon retirement.

■  Certain standard principles of administrative law aid in the resolution of this dispute. First, it is settled law that administrative regulations are subordinated to the statute providing for the adoption of the regulations and any legislative act. That is, the regulation must be consistent with the statute and may not violate any other law of the state. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687].) Moreover it is fixed law that an administrative agency is bound by its own regulations. (*United States* v. *Nixon* (1974) 418 U.S. 683 [41 L.Ed.2d 1039, 94 S.Ct. 3090]; *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63 [87 Cal.Rptr. 731].)  ■  Finally, in accordance with this court's ruling in *Frates,* a district's rules must be construed against the district.

Thus the question which the court must address is whether with these principles in mind any valid distinction may be drawn between the words "vacation" (as used in § 42904's provision that the president shall determine when the employee shall take vacation), and "accumulated vacation" (appearing in § 383's provision permitting employees to accumulate the unused portion of vacation credit and providing for payment for accumulated vacation credit upon retirement).

■  It appears that as early as 1943 the courts of this state recognized a distinction between "vacations" and "accumulated vacation credit." *Verry* v. *Eckel* (1943) 61 Cal.App.2d 595 [143 P.2d 394], held that a right

to a single year's vacation is distinct from cumulative vacation credit. The court noted the words cumulative and accumulative " 'signify . . . growth in volume by periodical accretions.' . . . ' "Cumulative," as defined by the legal lexicographers means "additional; that which is superadded to another thing of the same character and not substituted for it." ' " (*Id.,* at p. 599.)

Moreover early California cases which prohibited the accumulation of vacation credit without statutory authority rested upon the same distinction. Thus, early cases taught " 'vacation' in this sense, means on the one hand a beneficent surcease from regular duty [for a specified period], that a period of freedom, rest or diversion for the employee may be enjoyed, and upon the other a gain to the employer through a recuperated and better satisfied employee. Accumulation of vacation would entirely negative such purposes." (*Nicholson* v. *Amar* (1935) 7 Cal.App.2d 290, 291 [45 P.2d 697].)

Clearly the distinction drawn in the early cases has applicability to the issues before this court. In the event the president were permitted to direct the taking of accumulated vacation, it would not be for the legally recognized purpose of vacation, i.e., a surcease of labor by the employee, and the benefit redounding to the employer by virtue thereof, but as the chairman of the department frankly acknowledged, solely for the purpose of the perceived economic well-being of the department.

The relatively few cases in the private sector dealing with "vacation with pay clauses" lend some support to this analysis.[5] "Decisions have made clear that a contractual provision for vacation with pay is neither a gratuity nor a gift. It is a supplement to the employment agreement which in effect constitutes an offer of reward or *additional wages* for constant and continuous service." (Italics added.) (*Div. Labor L. Enf.* v. *Ryan Aero. Co.* (1951) 106 Cal.App.2d Supp. 833, 836 [236 P.2d 236, 30 A.L.R.2d 347].) ▇ Thus in general while the timing of vacations in the private sector is left to the employer, (see in general 30 A.L.R.2d 360), the employer may not arrange his schedule so as to frustrate vacation benefits which have become due and payable, for his own economic benefit. (*Allied Industrial Wkrs., AFL-CIO Loc. U. No. 289* v. *N.L.R.B.* (D.C.Cir. 1973) 476 F.2d 868.)

[5]As this court has noted before there is considerable dispute concerning whether general contractual principles involving private employers and employees applies to public employment. See *Currieri* v. *City of Roseville* (1975) 50 Cal.App.3d 499 [123 Cal.Rptr. 314]. The discussion above does not mean to suggest that the situations are wholly analogous, but merely demonstrates that a principle of general private employment law aids in our construction of the statutes in question here.

Finally a cautionary word appears appropriate. This court's recognition of a distinction between "vacation" and "accumulated vacation" should not be viewed as providing the employee with a right to determine his vacation schedule without relation to the needs of his employer. Clearly those provisions of the regulations which provide the employer with the power to determine when vacation will be taken are for the purpose of insuring that vacation plans will not conflict with reasonable needs of the employer, and nothing we have said in this opinion dilutes that inherent power of the employer. ▪▪▪ We merely hold that a public employer may not direct an employee to expend his accumulated vacation credit, but that the latter may elect to receive a lump sum payment instead.[6]

The judgment is affirmed.

Puglia, P. J., and Paras, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 29, 1979.

---

[6]We view this construction as a proper one for yet another reason. A contra interpretation would give rise to serious constitutional questions concerning section 42904's apparent delegation of unbridled discretion to the president. See, e.g., *In re Porterfield* (1946) 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675].