[No. B163710. Second Dist., Div. Eight. Feb. 11, 2004.]

LOS ANGELES COUNTY PROFESSIONAL PEACE OFFICERS'
ASSOCIATION et al., Appellants, v.
COUNTY OF LOS ANGELES et al., Respondents.

COUNSEL

Silver, Hadden & Silver, Stephen H. Silver and Katherine Lipel for Appellants.

Goldstein, Kennedy & Petito, Gregory G. Kennedy, Deborah H. Petito; and Steve Morris, County Counsel, for Respondents County of Los Angeles and David Janssen.

David L. Muir, Margaret L. Oldendorf and Michael D. Herrera for Respondent Los Angeles County Employees Retirement Association.

OPINION

**RUBIN, J.**—Petitioners William Kupper, Bennie Layne, and the Los Angeles County Professional Peace Officers' Association appeal from the judgment entered after the trial court denied their mandate petition against Los Angeles County and the Los Angeles County Employees' Retirement Association. For the reasons set forth below, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

William Kupper and Bennie Layne worked as investigators for the Los Angeles County District Attorney's Office.[1] Both men stayed off work on a temporary disability leave after being injured on the job, but retired after their disabilities became permanent.[2] Under the applicable County ordinances, D.A. investigators may accumulate up to 320 hours in current and deferred vacation time. If an employee's vacation total exceeds 320 hours as of year's end, however, the balance "shall be reduced" by the excess amount, with the employee paid for the lost vacation hours at the rate of his salary. (L.A. County Code, § 6.18.080E.) Vacation time that is cashed out under this provision is added into the employee salary figure used to calculate retirement benefits.

While out on a temporary leave due to a work-related injury, however, none of the County provisions limiting the carryover of vacation time apply. (L.A. County Code, § 6.20.070F.1.) The County interprets this to mean that it will not cash out excess vacation time while an employee is on a work-related disability leave, but permits the employee to keep the accrued vacation time. The vacation carryover limits do not kick in again until "the end of the first vacation anniversary year of [the disabled] employee's return to duty." (L.A. County Code, § 6.20.070F.1.) When Kupper and Layne

---

[1] We will refer to Los Angeles County as "the County" and to the County District Attorney's Office as "the D.A."

[2] Kupper retired on March 31, 2000, and Layne retired on October 15, 2000.

retired, each was paid back for all accumulated vacation hours. However, because their vacation time was cashed out after retirement, the money they were paid was not used to determine their pension benefits.

Kupper, Layne, and their union, the Los Angeles County Professional Peace Officers' Association (the Association) brought a mandate petition (Code Civ. Proc., § 1085) against the County, its chief administrative officer, David Janssen, and the Retirement Board of the Los Angeles County Employees' Retirement Association (LACERA), which manages the County's pension system.[3] Appellants alleged that they were entitled to the vacation pay cash-out while on temporary disability as a matter of right. By failing to make the payment, they alleged, the County violated its obligation to fully compensate them during that period (Lab. Code, § 4850), thereby reducing the amount of their pension benefits. They also alleged that respondents' conduct violated their constitutional equal protection rights. The D.A. supplied uncontradicted evidence showing that its policy and practice was to have all its employees take enough vacation time each year to keep their accrued vacation time under the 320-hour lid. Only in a very few exceptional cases caused by the demands of the job did the D.A. allow its workers to carry over more than 320 hours.

The trial court found for respondents and denied appellants' petition. This appeal followed.

## STANDARD OF REVIEW

Appellants brought a petition for traditional mandate. (Code Civ. Proc., § 1085.) That type of petition seeks to enforce a mandatory and ministerial duty to act on the part of an administrative agency or its officers. Appellants therefore had to show: (1) a clear, present, and usually ministerial duty to act; and (2) that they had a clear, present and beneficial right to have that duty performed. Mandate will not issue if the duty is not plain or is mixed with discretionary power or the exercise of judgment. In reviewing the trial court's ruling, we will affirm if substantial evidence supports its findings and judgment. To the extent questions of law such as statutory interpretation are involved, we exercise our independent judgment. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618–619 [113 Cal.Rptr.2d 309].)

## DISCUSSION

Labor Code section 4850 (section 4850) is part of the workers' compensation laws. When certain public safety officers, including D.A. investigators, are injured on the job, it provides those employees a leave of absence for

---

[3] We will sometimes refer to Kupper, Layne, and the Association collectively as "appellants." When we refer to the County, we include Janssen. We will sometimes refer to the County and LACERA collectively as "respondents."

upare injured on the job, it provides those employees a leave of absence for upto one year "without loss of salary" instead of the scheduled workers' compensation benefits applicable to most other employees. (§ 4850, subds. (a), (b)(5).) After one year, the employee is entitled to an *unpaid* leave of absence and whatever regular workers' compensation benefits may be available. Payments made under section 4850 are considered workers' compensation benefits, not salary. (*City of Martinez v. Workers' Comp. Appeals Bd.* (2000) 85 Cal.App.4th 601, 613–614 [102 Cal.Rptr.2d 588].)

The phrase "without loss of salary" has been construed to mean sick pay and other fringe benefits to which an employee is entitled. (*Mannetter v. County of Marin* (1976) 62 Cal.App.3d 518, 524 [133 Cal.Rptr. 119] (*Mannetter*); *Austin v. City of Santa Monica* (1965) 234 Cal.App.2d 841, 845–846 [44 Cal.Rptr. 857] (*Austin*).) The D.A.'s contemporaneous administrative practices are relevant to determining whether an employee is entitled to a benefit, thereby converting it into salary under section 4850. (*Johnson v. Contra Costa County Fire Protection Dist.* (1972) 23 Cal.App.3d 868, 873 [100 Cal.Rptr. 561] (*Johnson*).)

Kupper and Layne contend under *Johnson, supra,* 23 Cal.App.3d 868, and *Austin, supra,* 234 Cal.App.2d 841, that they were entitled to a cash-out of their excess vacation time during the time they were on disability leave, meaning that the County's failure to credit its buy-back as such violated section 4850.[4] Both decisions are inapplicable, however. The plaintiff in *Johnson* was a firefighter who sought holiday pay for all holidays occurring during his year-long disability leave. The ordinance governing his eligibility for holiday pay required that he have been in a shift position on the day before the holiday and had worked at least one shift after the holiday. The fire department placed the injured worker in a nonshift category during his leave, therefore depriving him of the right to holiday pay. When the ordinance was combined with the department's own administrative practices, firefighters in shift positions always received holiday pay and the department could not strip away that right by placing the plaintiff in a nonshift position during his disability leave. (*Johnson, supra,* at p. 873.) The plaintiff in *Austin* had one day of accumulated sick leave deducted for each day he received salary as workers' compensation under section 4850. While suggesting that a limit on the right to earn sick leave might have been proper, accumulated sick leave that had already been earned was part of the employee's salary and taking it away violated section 4850. (*Austin, supra,* at pp. 845–846.) Both *Johnson* and *Austin* involved the right to benefits that were guaranteed or vested. As set forth below, that is not the case here and we therefore believe *Mannetter, supra,* 62 Cal.App.3d 518, is applicable.

---

[4] Appellants appear to concede that if the excess vacation time is considered part of "termination" pay, it is not used in the calculation of retirement benefits. (*In re Retirement Cases* (2003) 110 Cal.App.4th 426, 474–477 [1 Cal.Rptr.3d 790].)

The plaintiff in *Mannetter* was a deputy sheriff out on temporary disability leave for a work-related injury that occurred on July 3. The deputy had been scheduled to work on the July 4 holiday which, under the terms of his union's collective bargaining agreement, would have entitled him to time-and-a-half holiday pay. The deputy sued when he was not paid for the July 4 holiday, contending that it was part of his salary under section 4850.

In affirming the trial court's denial of the deputy's mandate petition, the appellate court focused on the terms of the union's agreement, which stated that an employee "who is required to work" on a holiday is entitled to holiday pay. The *Mannetter* court rejected the deputy's attempt to interpret the phrase "required to work" as "scheduled to work" or as "required to work but does not work for a justifiable reason." Distinguishing its facts from those in *Johnson* and *Austin*, where the employee had a clear right to certain benefits, the *Mannetter* court refused to extend section 4850 to entitlements that an employee might reasonably have received during his disability leave. To hold otherwise, the court said, could allow an employee on disability leave to claim he would have received a raise and a promotion, opportunities which were denied him because of his injury. Therefore, despite the strong public policy to fully indemnify employees covered by section 4850, "this policy does not include indemnification for benefits that an employee *might* have received as a condition of employment during the period of time he was on a leave of absence." (*Mannetter, supra,* 62 Cal.App.3d at p. 525.)

**(1)** The undisputed evidence in this case showed that in order to avoid cash buy-outs of excess vacation time, the D.A. made employees take vacation when needed to bring their accrued vacation time under the 320-hour limit. In one recent period, just 49 of the D.A.'s 2,000 employees received a vacation buy-out. Most were exceptional cases and involved attorneys who were unable to take vacation due to trials or other proceedings. Of the D.A.'s 265 investigators, only three received vacation buy-outs in the year 2000—one for 17.9 hours, one for 72.4 hours, and one for 4 hours. In 2001, only four investigators were paid for excess vacation time—one for 6.14 hours, one for 72.34 hours, one for .79 hours, and one for 1.39 hours.[5] Given the D.A.'s practice in regard to avoiding buy-backs of excess accrued vacation time, appellants were not entitled as a matter of right to such a buy-back while on disability. Instead, as in *Mannetter*, the cash-out of excess vacation time was nothing more than a possibility that only a fraction of the D.A.'s investigators might obtain in any given year. (*Fenn v. Workers' Comp. Appeals Bd.* (2003) 107 Cal.App.4th 1292, 1298 [132 Cal.Rptr.2d 878]

---

[5] Not only did appellants fail to respond to this evidence, they submitted none of their own. As a result, there was no evidence that Kupper and Layne actually exceeded the 320-hour limit or had demanded a cash-out of any excess vacation time before filing suit.

[firefighter claimed right to federally mandated overtime payments as part of his regular salary for purposes of section 4850; relying on *Mannetter,* held that the plaintiff was not entitled to "potential benefits" but had to actually work the required hours and had deliberately taken time off during the period when the right to the overtime was calculated]; *Mannetter, supra,* 62 Cal.App.3d at pp. 524–525.)

■ In short, as the trial court found, the County's excess vacation buy-back policy did not grant appellants any rights but instead limited the amount of vacation time that could be accrued. Appellants contend this violated Labor Code section 227.3, which makes it unlawful for employers to provide for the forfeiture of an employee's vested vacation rights and which requires that employees be fully compensated in cash for any unused vacation time. Appellants rely primarily on three decisions to support this contention: *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 [183 Cal.Rptr. 846, 647 P.2d 122]; *Kistler v. Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326 [19 Cal.Rptr.2d 417]; and *Bonn v. California State University, Chico* (1979) 88 Cal.App.3d 985 [152 Cal.Rptr. 267]. At issue in *Suastez* was an employer's refusal to prorate accrued vacation time when an employee was terminated while the issue in *Bonn* and *Kistler* was whether the employer could require employees to use up all accrued vacation time before their employment terminated, even though by statute or written policy, the workers were allowed to accrue vacation time through the end of their employment. None of these decisions is applicable here. As we understand the County's policy and practice, no employee ever forfeited accrued vacation time. Instead, the County allowed its workers to accrue up to 320 hours of vacation time, but tried its best to have employees take any vacation hours over that amount. If they could not due to the demands of their work schedules, the employees would be fully compensated at year's end for the loss of any remaining excess vacation. The County's policy was therefore not a "use it or lose it" provision and did not cause the forfeiture of any vested vacation time: it was simply an attempt to limit the amount of vacation time that could be accrued, which is allowed by Labor Code section 227.3. (*Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1601–1603 [8 Cal.Rptr.2d 600].) Here, too, appellants were not compelled to forfeit their excess vacation time, they were just not entitled to force the county to cash it out while on disability. When they were no longer receiving disability benefits because they had retired, appellants were paid the accrued vacation time as part of termination pay, which, as noted, is not included in calculating retirement benefits. (See *In re Retirement Cases, supra,* 110 Cal.App.4th at pp. 474–477.)

■ Finally, appellants contend that respondents violated both their constitutional equal protection rights (U.S. Const., 14th Amend.) and Labor Code

section 132a because its policy and practice discriminated against disabled employees, who were precluded from having excess accrued vacation time cashed out while on disability leave. Both claims require proof that Kupper and Layne were treated differently than employees who were not on disability leave. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1298–1301 [135 Cal.Rptr.2d 665, 70 P.3d 1076] [Lab. Code, § 132a]; *Kim v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 1357, 1361 [87 Cal.Rptr.2d 382] [equal protection clause forbids discrimination against persons in certain classifications].) No such discrimination occurred here. Under the County's practice, the D.A. attempts to have all its employees take enough vacation time each year to keep their accrued time under 320 hours. Cash-outs of unused excess vacation time at year's end occur in only a very few exceptional cases. Granting Kupper and Layne such a cash-out simply because they might have fallen within that small, select group had they not been disabled would not cure discrimination against employees on disability leave—it would grant those employees additional pension benefits to which nearly all of their nondisabled counterparts are not entitled.[6]

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Boland, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 19, 2004.

---

[6] While our decision focuses solely on the meaning and effect of the County's vacation policies, we view LACERA's purported liability as derivative of the County's. Therefore, our holding that the County did not violate section 4850 applies with equal force to LACERA.