
[No. B188886. Second Dist., Div. Two. Sept. 11, 2007.]

ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

LOS ANGELES COUNTY PROFESSIONAL PEACE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES el al., Defendants and Appellants.

COUNSEL

Green & Shinee, Richard A. Shinee and Helen L. Schwab for Plaintiffs and Appellants Association for Los Angeles Deputy Sheriffs, District Attorney Investigators Craig Helmkamp, Gary Judge, Larry Oda, Murray Davis, Paul Walker, Brian O'Reilly and Deputy Sheriff Dennis Riley.

Silver, Hadden & Silver and Stephen H. Silver for Plaintiffs and Appellants Los Angeles County Professional Peace Officers Association, Tom Simpson and Robert H. Hausken.

Law Offices of Gregory G. Kennedy and Gregory G. Kennedy for Defendants and Appellants.

OPINION

**DOI TODD, J.**—The primary issue in this case is whether the County of Los Angeles (County) can force peace officer employees to use excess deferred vacation time in order to avoid a year-end cash payout for that time. Construing the relevant provisions of the Los Angeles County Code and memoranda of understanding (MOU's) between the parties, we affirm the trial court's determination that the County does have the managerial power to force the use of deferred vacation time. We reverse the trial court's award of payment to the employees for excess vacation time hours.

## FACTUAL AND PROCEDURAL BACKGROUND

The individual claimants in these consolidated cases were sworn peace officers employed by the County as deputy sheriffs or district attorney investigators.[1] The Association for Los Angeles Deputy Sheriffs (ALADS) and Los Angeles County Professional Peace Officers Association (PPOA) are the employee organizations recognized by the County as the exclusive union representatives for these officers. (We shall sometimes refer to the unions and the individual claimants collectively as the employees.) The employees sued the County, as well as District Attorney Steve Cooley and Sheriff Leroy Baca (collectively referred to here as the County) in two separate cases, seeking a determination that the County could not force the officers to use excess

---

[1] The individual claimants are Craig Helmkamp, Gary Judge, Larry Oda, Murray Davis, Paul Walker, Brian O'Reilly, Dennis Riley, Tom Simpson and Robert H. Hausken.

deferred vacation time rather than receive a cash payout for those benefits, and seeking restoration of deferred vacation benefits which they had been required to take during the preceding three years and cash payment for that time.

The cases were consolidated and the parties proceeded to a court trial offering stipulated facts, joint exhibits, and the testimony of three witnesses. This evidence established the following facts.

Prior to 1979, a County employee could accumulate up to 40 days or 320 hours of vacation time, and any vacation time earned in excess of the maximum was forfeited. In 1979 a coalition of employee unions, including ALADS and PPOA, negotiated a new benefit for its members, namely, the right to defer vacation time in excess of 40 days (320 hours) for one year and to be paid cash for the excess deferred vacation time that was not used by the end of the deferral year.[2]

The new benefit was set forth in a 1979 MOU: The "parties agree to recommend to the County's Board of Supervisors . . . a revision . . . which . . . will allow employees whose current and deferred vacation total more than 40 days [320 hours] to have deferred the excess vacation time over 40 days for no more than one additional year. After that year, if such excess vacation time over 40 days has not been used, the employee will be paid for such excess . . . ." (1979 MOU, art. 16.)

A similarly worded provision was included in a 1994 MOU. This MOU also provided: "Nothing in this Article diminishes the department head's authority to grant, schedule, and defer vacation time." (1994 MOU, art. 15, § 4.)

Subsequently, the management rights provision in a 1999 MOU provided that the County had the exclusive right to exercise control and discretion over its organization and operations, and "to direct its employees, . . . relieve its employees from duty, effect work furloughs or any other alternatives because of lack of work or for other legitimate reasons, and determine the methods,

---

[2] The maximum yearly amount of vacation hours an employee of the classifications represented in this litigation could accrue under the MOU was 160 hours, so that the most an employee could defer was now 320 hours plus 160 hours for a total of 480 hours.

means and personnel by which the County's operations are to be conducted." (1999 MOU, art. 22.)

The new deferral benefit was set forth in section 6.18.080 E of the Los Angeles County Code,[3] which provides: "Effective on December 31, 1993 and at the end of each calendar year thereafter, the sum of an employee's Current and Deferred Vacation may be deferred to the following calendar year. If that sum exceeds 320 hours, those hours in excess of 320 hours must be used by the end of the calendar year to which they were deferred. If, at the end of that year, an employee still has Current and Deferred Vacation in excess of 320 hours, the employee's balance of available vacation hours shall be reduced by the number of hours in excess of 320 hours that were deferred, and the employee shall be compensated for the reduction on an hour-for-hour basis at the employee's workday rate of pay in effect on the last day of the year of deferment."[4] Section 6.18.020 defines "Current Vacation" as that vacation time that has been earned and accrued in the current calendar year and defines "Deferred Vacation" as that vacation time that was earned and accrued during the preceding or earlier calendar year.[5]

In addition to the county code and MOU provisions, the new deferral benefit had been described in a sheriff's October 7, 1980 temporary departmental order as follows: "<u>Deferred Vacations</u> It has been Department policy to allow personnel to defer vacations in accordance with County rules and regulations. This meant a maximum accumulation of 40 days (320 hours). [¶] A recent change in the Memorandum of Understanding (1979) allows employees to accumulate an additional 20 vacation days to a maximum of 60 days (480 hours). [¶] It shall be the policy of this Department that employees who accumulate in excess of 40 vacation days submit an Absence Request Form requiring Unit Commander approval for the purpose for using the excess time. This request must identify the time as excess and be submitted <u>within 90 days after the accumulation</u>. Because the Memorandum of Understanding gives the Department authority to <u>grant</u>, <u>schedule</u>, and <u>defer</u> vacation time in excess of 40 days, failure to comply with the 90-day requirement will result

---

[3] All further statutory and regulatory references are to the Los Angeles County Code unless otherwise specified.

[4] *Increased cash payments under section 6.18.080 E are included in an employee's final compensation based upon which pension benefits are calculated.* It is undisputed that an employee's termination pay upon retirement includes payment for the vacation hours earned during his or her last year of service.

[5] The county code also gives department heads such as the district attorney and the sheriff the authority to schedule employees' work hours and days. (§§ 2.02.100, 2.02.190, 2.04.020, 2.04.070, 2.06.070, 2.09.030, 2.09.050, 2.16.010, 6.02.020.) And section 6.18.080 A provides: "Vacations shall be taken at the time authorized by an employee's department head."

in employees being scheduled off for the excess vacation time by management without consideration of employees' time preferences. [¶] <u>Note</u>: All vacation time in excess of 40 days shall be expended within the current vacation year."

Subsequent sections of the sheriff's department manual, effective September 1, 1990, and April 1, 1996, continued to describe a right to force employees to use excess deferred vacation: "failure to comply with the 90-day requirement will result in employees being scheduled off for the excess vacation time by management without consideration of the employees' time preference. . . ."

Ken West, assistant director of the sheriff's department, testified that these written policies were provided to ALADS and PPOA and that the department has enforced its policy of forced vacations since 1979.

Captain Horvath, commander of the criminal division that included the district attorney investigators, testified that he has routinely ordered employees to use excess deferred vacation since at least 1998. Steven Sowders, formerly a head deputy district attorney, also testified that there was a long-standing policy in the district attorney's office of forcing use of excess deferred vacation leave. On October 28, 2002, district attorney management sent a memorandum to all investigative personnel stating that "employees can be required by management to take excess vacation time off."

The parties stipulated that since January 2000, pursuant to section 6.18.080 E, both the office of the district attorney and the sheriff's department required their officers to use vacation hours in excess of 320 that were carried over from the previous calendar year in order to avoid a cash payment for the excess hours at the end of the deferral year. The only exceptions were when the employer's demands required an employee to remain at work or when payment of the excess deferred vacation hours was less than the cost of a replacement employee's overtime compensation. When questioned by the trial court, counsel for the employees confirmed that the employees were not contending that they did not know about the forced vacation policy.

Towards the end of 2002, each of the individual claimants was ordered to use vacation hours in excess of 320 that he had carried over from the previous year by the end of 2002. One claimant complained that his cash payment for 2002 excess vacation time did not include payment for 160 deferred vacation hours.

The employees filed these lawsuits in 2003. The trial court found that the County had the right to force employees to use excess deferred vacation time to avoid cash payouts for that time. The court also found that the employees were entitled to cash payments for current and deferred vacation hours in excess of 320 hours, which resulted in an order for payment to each claimant for an additional 160 hours.

The County's motion to vacate that part of the judgment granting the employees payment for an additional 160 hours was denied. The County filed a notice of appeal and the employees cross-appealed.

## DISCUSSION

### I. *Contentions on Appeal and Standard of Review*

The employees contend that the County caused them to forfeit an employment benefit by forcing them to use excess deferred vacation hours rather than allowing them to receive a cash payment for those hours. They argue that such a policy can be enforced only if it is written and unambiguous. The employees seek restoration of the vacation time they were forced to take and payment for those hours.

The County contends that the trial court erred in awarding the claimants payment for an additional 160 vacation hours.

As the facts are not disputed, resolution of these issues depends upon interpretations of the county code and MOU's between the parties. We review those matters de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1278 [105 Cal.Rptr.2d 237].)

### II. *The County's Right to Force Vacations*

The trial court held that the County has "the management right to set the terms and conditions of its employees, including, but not limited to, the management right to require plaintiffs and petitioners herein to take off accrued vacation under the California Constitution, applicable California laws, and the charter of the County of Los Angeles . . . ." The employees argue that the County's forced vacation policy violates their right under the county code to receive a cash payout for excess deferred vacation hours and impermissibly divests them of a valuable employment benefit under *Bonn v. California State University, Chico* (1979) 88 Cal.App.3d 985 [152 Cal.Rptr. 267] (*Bonn*) and *Kistler v. Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326 [19 Cal.Rptr.2d 417] (*Kistler*). We disagree. The employees

interpret both their rights and the prevailing cases too broadly. The cases on which the employees rely are inapposite because they concern vacation benefits already vested, while the benefits at issue here are prospective. Furthermore, we agree with the court's characterization in *Los Angeles County Prof. Peace Officers' Assn. v. County of Los Angeles* (2004) 115 Cal.App.4th 866, 872 [9 Cal.Rptr.3d 615] (*Los Angeles County Prof. Peace Officers*) of the County's excess vacation buy-back policy as not granting any rights to employees, but rather limiting the amount of vacation time that can be accrued.

### A. The County Code Does Not Grant an Unconditional Right to Cash Payment

The employees contend that section 6.18.080 E grants the officers an unconditional right to a cash payout for excess deferred hours and that this right was abrogated by the County forcing them to use those hours rather than receive the cash payout. But this argument ignores the explicit directive in 6.18.080 E that "those hours in excess of 320 hours *must be used* by the end of the calendar year to which they were deferred. . . ." (§ 6.18.080 E, italics added.) Were we to adopt the employees' interpretation of this section, the directive to use the deferred hours within the deferral year would be rendered a nullity. This would be in contravention of well-established principles of statutory interpretation that " '[a]n interpretation that renders statutory language a nullity is obviously to be avoided. . . .' " (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 937 [42 Cal.Rptr.3d 96], citation omitted.)

On the other hand, the directive that the hours must be used and the provision for a cash payout for hours not used may be harmonized by adopting the County's interpretation of those provisions. That is, an employee has the right to defer excess vacation time, but must use the time as vacation by the end of the deferral year; in the event the excess vacation time is not used, the employee is entitled to payment. The circumstances under which an employee may be excused from the directive of utilizing the hours are explained by the stipulated facts in this case. Both the district attorney's office and the sheriff's department reserved the management right to allow the continued accumulation of excess hours should the demands of the particular department require the continued presence of a particular employee or when paying the excess would cost less than paying a temporary replacement.

█ We do not construe the county code to provide the employees with an unconditional right to accumulate excess deferred hours and be paid for them. Nothing in section 6.18.080 E curtails the County's management right to set the terms and conditions of employment, including the right to force the use of excess deferred vacation.

Our construction of section 6.18.080 E is also clearly reflected in the various MOU's between the County and the employees, adopted after 1979 when the new right to defer vacation time in excess of 320 hours was negotiated. The 1994 MOU specifically provided that the excess vacation time pay provision did not diminish the authority of the district attorney or the sheriff, "to grant, schedule, and defer vacation." (1994 MOU, art. 15, § 4.) Article 22 of the 1999 MOU between the parties again recognized the exclusive right of the County to exercise control and discretion over its organization and operations and "to relieve its employees from duty, effect work furloughs or any other alternative because of lack of work or for other legitimate reasons, and determine the methods, means and personnel by which the County's operations are to be conducted."

### B. *Forced Vacation Supported by Departmental Policies*

The employees contend that the sheriff's written policy does not comport with the rights under section 6.18.080 E to a cash payment. Because we have already concluded that section 6.18.080 E does not confer the right to payment that the employees claim, we necessarily find no inconsistency in the department policy statements promulgated by the sheriff on this issue.

The employees do not claim that the district attorney did not have a policy forcing the use of excess deferred vacation before 2002, only that it was not effective because it was not in a writing directed specifically to them until October 2002. The employees rely on *Bonn* and *Kistler* to support their argument. But as we shall discuss in greater detail, *post*, *Bonn* and *Kistler* do not squarely apply to this case because they both involve the forced divestiture of already vested employment benefits. Here, section 6.18.080 E never conferred on the claimants the benefit they now seek to enforce, namely, the unconditional right to cash out their excess deferred vacation hours rather than use them by the end of the deferral year. The County's forced use policy, therefore, does not cause the forfeiture of a benefit, much less a vested benefit.

### C. *Case Law Does Not Invalidate the County's Forced Vacation Policy*

The employees contend that the County's policy of forcing the use of deferred vacation contravenes the holdings in *Bonn* and *Kistler.* They argue

that these cases disapprove of forced vacation policies. But neither case addresses the specific type of employment benefit at issue here. Nor does either case articulate a blanket prohibition of the forced use of deferred vacation hours. Rather, the courts disapprove of the forfeiture of a valuable employment benefit that has already vested.

In *Bonn,* at the time a California State University employee announced he would retire at the end of the year, he had already earned and accumulated 40 vacation days from previous years. (*Bonn, supra,* 88 Cal.App.3d at pp. 987–988.) The governing statute and regulation provided that an employee could accumulate 40 days of vacation and " '[u]pon separation from service without fault an employee shall be paid for accumulated vacation credit . . . .' " (*Id.* at p. 990.) But the university forced Bonn to use his accumulated vacation hours, thus diminishing his cash payment upon retirement in derogation of the governing statute. Moreover, Bonn was the first employee ever to receive such an order. The court rejected the university's argument that the power granted to its president to determine when an employee could take vacation also included the power to force the use of already properly accumulated vacation benefits.

But *Bonn* does not, as the employees argue, prohibit an employer from forcing an employee to use vacation benefits under the circumstances. Nor are we persuaded that the application of *Bonn* should extend to the facts of this case, in which the governing ordinance specifically directs that excess deferred hours must be used by the end of the deferral year and department policies forcing the use of those hours were in existence and were enforced.

Similarly in *Kistler,* the court disallowed a college from forcing three employees to use vacation hours they had already accumulated under a policy that allowed the accumulation and provided for payment for the accumulated hours. The policy allowed the deferral of 40 days' vacation and a payment for those 40 plus an additional 20 vacation days in the last year of service. But the college forced the employees to take vacations in order to deplete all 60 days. Recognizing the limitation of its holding to accrued vacation pay, the court stated, "The rule against forfeiture of *accrued* vacation rights, by its own terms, cannot apply to vacation pay which is to be earned in the future, i.e., which has not yet accrued." (*Kistler, supra,* 15 Cal.App.4th at p. 1334.)

█ The *Kistler* court relied on *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1600–1602 [8 Cal.Rptr.2d 600] in which the court viewed paid vacation benefits in the private sector as a type of deferred compensation that vests as it is earned. Once vested, the benefit cannot be forfeited. (*Ibid.*) Nevertheless, the court recognized a "subtle but critical difference between two different types of vacation policies, both of which, on their face, prevent

accumulation of vacation time from year to year. [¶] A 'use it or lose it' vacation policy provides for forfeiture of vested vacation pay if not used within a designated time, while a 'no additional accrual' vacation policy prevents an employee from earning vacation [benefits] over a certain limit. Although both policies achieve virtually the same result, the former is impermissible and the latter permissible. [¶] . . . A 'no additional accrual' policy simply provides for paid vacation as part of the compensation package until a maximum amount of vacation is accrued. The policy, however, does not provide for paid vacation as part of the compensation package while accrued, unused vacation remains at the maximum. Since no more vacation is earned, no more vests. A 'no additional accrual' policy, therefore, does not attempt an illegal forfeiture of vested vacation." (*Id.* at pp. 1601–1602.) We agree with our brethren in Division Eight in *Los Angeles County Prof. Peace Officers* that the County's policy with respect to deferred vacation benefits is a species of "no further accrual" rather than a "use it or lose it" type of policy: "The County's policy was therefore not a 'use it or lose it' provision and did not cause the forfeiture of any vested vacation time: it was simply an attempt to limit the amount of vacation time that could be accrued . . . ." (*Los Angeles County Prof. Peace Officers, supra*, 115 Cal.App.4th at p. 872.)

██ We find no error in the trial court's determination that the County and its departments had the right to force the employees to use their excess deferred vacation hours in order to avoid paying them a cash buyout at the end of the year.

III. *The Award of Cash Payments for an Additional 160 Hours Was Error*

The County appeals the portion of the judgment that awards the employees "cash out payments for hours accumulated in excess of 320 hours." The County argues that the county code allows only for payment of *deferred* hours in excess of 320 and that the undisputed evidence demonstrates that it has already made those payments. The employees, on the other hand, respond that in accordance with the written policies of the sheriff's department and the district attorney, they were entitled to payment for current and deferred hours in excess of 320.

Resolution of this issue depends upon whether the county code or nonconforming departmental policies control the calculation of the employment benefits. The County concedes that the sheriff's department's written policy with respect to cash payments of excess deferred vacation hours does not accurately reflect the County ordinance.

The county code provides that "an employee's Current and Deferred Vacation may be deferred to the following calendar year. If that sum exceeds 320 hours those hours in excess of 320 hours must be used by the end of the

calendar year to which they were deferred. If, at the end of that year, an employee still has Current and Deferred Vacation in excess of 320 hours the employee's balance of available vacation hours shall be reduced by the number of hours in excess of 320 hours *that were deferred*, and the employee shall be compensated for the reduction . . . ." (§ 6.18.080 E, italics added.)

On the other hand, the sheriff's policy states: "All vacation time in excess of 320 hours shall be used within the same vacation year. If, at the end of the year, an employee still has current and deferred vacation in excess of 320 hours, the employee's *balance of available vacation hours* shall be reduced by the number of hours in excess of 320." (Italics added.)

The current written version of the district attorney's policy states: "Whenever the sum of an employee's current and deferred vacation exceeds 320 hours, that portion in excess of 320 hours may be deferred for no more than one year. If, at the end of that year, an employee still has current and deferred vacation in excess of 320 hours, they [*sic*] shall lose that portion in excess of 320 hours and be compensated for it . . . ."

The trial court relied on the articulation of the County's policy in *Los Angeles County Prof. Peace Officers, supra*, 115 Cal.App.4th 866, to award payment. This reliance was misplaced and the award was error. In *Los Angeles County Prof. Peace Officers, supra*, 115 Cal.App.4th at page 868, the court described the County policy as follows: "Under the applicable County ordinances, D.A. investigators may accumulate up to 320 hours in current and deferred vacation time. If an employee's vacation total exceeds 320 hours as of year's end, however, the balance 'shall be reduced' by the excess amount, with the employee paid for the lost vacation hours . . . ." The ordinance would have been more accurately described if the court had stated that "the year-end balance shall be reduced by the excess *deferred* amount." But the court's description of the amount of payment was only dicta. The principal issue in that case was not the manner of calculating payments for excess deferred vacation hours but whether employees were entitled to such benefits during disability leave. (See *George F. Hillenbrand, Inc. v. Insurance Co. of North America* (2002) 104 Cal.App.4th 784, 806 [128 Cal.Rptr.2d 586] [case not authority on proposition not considered].)

■ The employees rely on *Frates v. Burnett* (1970) 9 Cal.App.3d 63, 69–70 [87 Cal.Rptr. 731] for the proposition that ambiguities in a contract of public employment must be resolved against the employer. But the ambiguity in that case was a school board procedure that did not comply with the governing statute and the result of the case was that the statute controlled. The employees fail to address *Markman v. County of Los Angeles* (1973) 35 Cal.App.3d 132, 134–135 [110 Cal.Rptr. 610], which held that "[t]he terms

and conditions relating to employment by a public agency are strictly controlled by statute or ordinance, . . . the public employee is entitled only to such compensation as is expressly provided by statute or ordinance . . . . [Citations.]"

We conclude that to the degree the department policies did not accurately reflect section 6.18.080 E, they were invalid and the employees were entitled only to that compensation set forth in the ordinance. Additionally, we note that the MOU agreed to by the unions and which underlies section 6.18.080 E provides that the employee will be paid only for the deferred vacation time in excess of 40 days (320 hours). (See *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 337 [124 Cal.Rptr. 513, 540 P.2d 609] [" 'memorandum of understanding, once adopted by the governing body of a public agency, becomes a binding agreement' "].)

We find no ambiguity in the language of section 6.18.080 E in this regard. It plainly states that an employee will be compensated only for a reduction in "the number of hours in excess of 320 hours *that were deferred* . . . ." (Italics added.) Thus, the section provides that during the first year of employment, an employee would earn 160 current vacation hours and could defer that amount into the next year. During the second year of employment, the employee would have 160 deferred vacation hours on hand and would earn an additional 160 current hours. If the hours were all deferred into the third year of employment, during the third year, the employee would have 320 deferred hours and would earn 160 current hours. If all of the hours were again deferred, 480 would be deferred into the fourth year of employment. But any hours in excess of 320 would have to be used by the end of the fourth year of employment. If the hours in excess of 320 were not used by the end of the year, the employee must be compensated for the excess hours. Section 6.18.080 E does not, as the employees argue, provide for payment for any portion of the 320 deferred hours or the 160 current hours that will be earned by the end of that year even if that is the employee's year of retirement.[6]

The trial court therefore erred in ordering that the employees are entitled to payment for an additional 160 hours under section 6.18.080 E.[7]

---

[6] West testified that the employees were paid for their "current" vacation hours earned during their last year of service as part of their termination pay. That testimony was undisputed.

[7] Having ruled in the County's favor, we need not address the County's contention that the trial court erred in excluding certain evidence at trial.

## DISPOSITION

That portion of the judgment ordering cash payments for all hours in excess of 320 hours is reversed. In all other respects, the judgment is affirmed. The County to recover its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

On September 14, 2007, the opinion was modified to read as printed above.